LOUIS BOSSERT et al., Copartners under the Trade Name of LOUIS BOSSERT · & SON, Respondents and Appellants, *v.* FREDERICK DHUY et al., Individually and as Business Agents of the JOINT DISTRICT COUNCIL OF NEW YORK AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and AMALGAMATED SOCIETY OF CARPENTERS AND JOINERS OF AMERICA et al., Appellants and Respondents.

**Labor unions — injunction — right of carpenters brotherhood or union to refuse to use woodwork made by non-union manufacturers — when the sending by representatives of such union of notices to members of the union and to building contractors not to use such woodwork is not illegal — injunctions will not be granted to restrain such acts where there are no findings of malice or intent to injure the good will or business of the plaintiffs or non-union manufacturers.**

1. The voluntary adoption by an association of employees of reasonable rules relating to persons for whom and conditions under which its members shall work is not illegal at common law. Neither is the enforcement of such rules by the association through fines or by expulsion from the association illegal.

2. Workingmen may organize for purposes deemed beneficial to themselves and in that organized capacity may determine that their members shall not work with non-members or upon specified work or kinds of work. If the determination is reached in good faith for the purpose of bettering the condition of its members and not through malice or otherwise to injure an employer the fact that such action may result in incidental injury to the employer does not constitute a justification for issuing an injunction against enforcing such action. ·

· 3. A strike or boycott may be legal or illegal according to the acts involved therein. So an action for a direct and primary purpose in the interest of individuals or a combination of individuals taken in good faith to advance the interest of the individuals or combination may be useful, while a remote and secondary action which carries with it a degree of malice as a matter of law is illegal.

4. Plaintiffs operated an open shop for the manufacture of woodwork for houses and other buildings, and defendants were officers of a brotherhood or voluntary association of carpenters and joiners.

The association adopted rules prior to any strike against the plaintiffs' materials that its members should not work on the products of any mill employing non-union men, and from time to time it circulated letters to contractors stating that in order to avoid labor troubles they were requested to stipulate for the employment of union men and union-made trim and other shop-made carpenter work, and that unless such materials were constructed under strict union conditions they would refuse to handle it, and that stipulating in the contracts that the trim must bear the union label would avoid all complications. The defendants having attempted to enforce the rules of the brotherhood against its members handling non-union made trim woodwork, this action was brought by the plaintiffs to obtain an injunction against the defendants taking action affecting the plaintiffs and the building material made in their mills. The courts below gave judgment perpetually enjoining the defendants from sending such letters to the plaintiffs' customers or inducing any person to refrain from working on material not bearing the union label. The findings of fact are that the rules of the association were adopted antedating any strikes against plaintiffs' material and that they were not adopted with the plaintiffs in view, but were intended to apply generally to all non-union mills; that they were adopted to increase wages and shorten hours of labor and to benefit the material condition of the members of the association, and had that effect in their enforcement; that the non-union mills, including that of the plaintiffs, compete in their products with the mills manned by the members of said United Brotherhood; that members of the brotherhood quit work on all jobs complained of because of their rules to work only on union material made by their own members, and of their own volition; that no labor contracts were violated and no violence or threat of violence, and that in all matters complained of they acted against all non-union employers without malice towards the plaintiffs. It also appears that it was not the intent and purpose of the defendants to injure the good will or business of the plaintiffs as individuals or of non-union manufacturers generally. *Held*, that the facts do not support the judgment. (*National Protective Association* v. *Cumming*, 170 N. Y. 315; *Paine Lumber Co.* v. *Neal*, 244 U. S. 459, 471, followed.)

*Bossert* v. *Dhuy*, 166 App. Div. 251, reversed.

(Argued April 6, 1917; decided October 9, 1917.)

APPEAL by the defendants from a judgment of the Appellate Division of the Supreme Court in the second

judicial department, entered January 7, 1915, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term in an action for an injunction. Also appeal, by the plaintiffs, from the same judgment in so far as it denies or omits to grant and award the plaintiffs certain portions of the relief prayed for.

The material part of the judgment appealed from is as follows: " It is adjudged that the defendants, their attorneys, agents, servants, associates and all persons acting in aid of or in connection with them and each of them, be and they hereby are perpetually enjoined and prohibited from conspiring, combining, or acting in concert in any manner to injure or interfere with the plaintiffs' good will, trade or business by any of the following means, to wit:

" By sending to any customer or prospective customer of plaintiffs, any letter, circular or communication printed, written or oral which in terms or by inference suggests that labor troubles will follow the use of materials purchased from plaintiffs or from any person, firm or corporation declared unfair or whose material does not bear the union label, meaning the plaintiffs thereby; or

" By inducing, ordering, directing, requiring or compelling by any by-law, rule or regulation or any act thereunder any person whatever to refrain from or cease working for any person, firm or corporation because they use material purchased of or furnished by plaintiffs, or by any person, firm or corporation declared unfair, or whose material does not bear the union label, meaning the plaintiffs thereby.

" And the defendants are further enjoined from inducing any workmen in other trades to quit work on any building because non-union carpenters are there employed to install the plaintiffs' materials which union carpenters refuse to handle or install.

" Nothing herein contained is to be construed to

prevent peaceable strikes except those directed against customers or prospective customers of plaintiffs for the purpose of injuring or interfering with plaintiffs' good will, trade or business."

The judgment of the Special Term was unanimously affirmed by the Appellate Division (*Bossert* v. *Dhuy,* 166 App. Div. 251) and the order of affirmance expressly states that the court "unanimously decided that the findings of fact are supported by the evidence." The facts found by the Special Term and so unanimously affirmed, as far as now material, are stated in the opinion.

*Charles Maitland Beattie* for defendants, appellants and respondents. The judgment is not warranted on the findings regarding motives, methods, self-interests and free individual volition in quitting work. (*A. P. Hogle Co.* v. *Mulvaney,* N. Y. L. J., May 11, 1912.) Men should not be compelled to work against their pecuniary interests and to lower their standard of living and to limit their chances of employment, as found in this case. (Martin on Law of Labor Unions, 34; *Nat. Fireproofing Co.* v. *Mason Builders,* 169 Fed. Rep. 259; *Allis-Chalmers* v. *Iron Moulders Union,* 150 Fed. Rep. 155; *Davis* v. *United Portable H. Engineers,* 28 App. Div. 396; *W. P. D. Machinery Co.* v. *Robinson,* 41 Misc. Rep. 329.) The generally accorded right to refuse to work with non-union men must be accorded to quit work on a non-union thing. (*McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 130; 198 N. Y. 589; *Nat. Fireproofing Co.* v. *Builders,* 169 Fed. Rep. 259; *Kellogg* v. *Sowerby,* 190 N. Y. 370; *Mogul S. S. Co.* v. *McGregor,* L. R. A. C. 1892, 25; *Crawford* v. *Tyrrell,* 128 N. Y. 341; *Paine* v. *Neal,* 212 Fed. Rep. 259.) The findings will not warrant the judgment on the theory that an unlawful boycott is disclosed. (*Loewe* v. *Lawlor,* 208 U. S. 274; *Mills* v. *U. S. Printing Co.,* 99 App. Div. 605; *Kissam* v. *U. S.*

*Printing Co.*, 128 App. Div. 889; *Park & Sons Co.* v. *Nat. D. Assn.*, 175 N. Y. 1; *Butterick Co.* v. *Typo. Union*, 50 Misc. Rep. 1; *Reynolds* v. *P. P. Assn.*, 30 Misc. Rep. 716; *Shinola Co.* v. *Krieg*, 75 Misc. Rep. 220.) The injunction cannot stand on the theory that defendants have violated the state Monopoly Act and certain conspiracy provisions of the penal laws. (*Blindell* v. *Hogan*, 59 Fed. Rep. 40; 56 Fed. Rep. 696; *Greer Mills* v. *Stroller*, 77 Fed. Rep. 1; *Nat. Fireproofing Co.* v. *Builders*, 169 Fed. Rep. 259; *Montgomery Ward & Co.* v. *S. D. R. M. & H. D. A.*, 150 Fed. Rep. 413; *Locker* v. *Am. Tobacco Co.*, 121 App. Div. 443; 195 N. Y. 565.)

*Walter Gordon Merritt* for plaintiffs, respondents and appellants. The combination violates sections 340 and 341 of the General Business Law of New York, and plaintiffs being irreparably injured in their property rights by such unlawful acts are entitled to protection by injunction. (*United States* v. *Knight*, 156 U. S. 1; *Miles Medical Co.* v. *Parks & Sons Co.*, 220 U. S. 373.) If the object of the combination be unlawful, it is immaterial that the means whereby it is carried out are lawful. The right to work or quit work is not more absolute than any other constitutional right and becomes illegal when exercised for the purpose of injuring another or accomplishing a result contrary to public policy or restraining trade contrary to statute or common law. (*Aikens* v. *Wisconsin*, 195 U. S. 204; *United States* v. *Debs*, 64 Fed. Rep. 724; *Gompers* v. *Buck S. & R. Co.*, 221 U. S. 418; *Swift & Co.* v. *U. S.*, 196 U. S. 375; *U. S.* v. *Reading*, 226 U. S. 324; *Loewe* v. *Lawlor*, 208 U. S. 274; *United States* v. *Rintelen*, 233 Fed. Rep. 793; *Rourke* v. *Elk Drug Co.*, 75 App. Div. 145; *Grassi Cont. Co.* v. *Bennett*, 174 App. Div. 244; *Arthur* v. *Oakes*, 63 Fed. Rep. 310; *Old Dominion S. S. Co.* v. *McKenna*, 30 Fed. Rep. 48; *Mapstrick* v. *Ramge*, 2 N. W. Rep. 297.) The combina-

tion charged falls within the class of restraints of trade aimed at compelling third parties and strangers involuntarily not to engage in the course of trade except on conditions that the combination imposes, and such a combination violates the Anti-Trust Laws. (*Loewe* v. *Lawlor,* 208 U. S. 274; *Northern Securities Co.* v. *U. S.,* 193 U. S. 197; *United States* v. *Patten,* 226 U. S. 525; *Standard Oil Co.* v. *United States,* 221 U. S. 1; *State* v. *Duluth Board of Trade,* 121 N. W. Rep. 395; *Merchants Legal Stamp Co.* v. *Murphy,* 107 N. E. Rep. 968; *Comm.* v. *North Shore Ice Co.,* 107 N. E. Rep. 402; *Brown & Allen* v. *Jacobs Pharmacy,* 41 S. E. Rep. 553.) The combination violates sections 340 and 341 of the General Business Law, which is the state Anti-Trust Law. (*Irving* v. *Neal,* 209 Fed. Rep. 471; *Paine* v. *Neal,* 212 Fed. Rep. 259; *People* v. *McFarlin,* 43 Misc. Rep. 591; 89 Misc. Rep. 527; *Gill Engraving Co.* v. *Doerr,* 214 Fed. Rep. 111, 118; *Auburn Draying Co.* v. *Wardell,* 89 Misc. Rep. 501; *Matter of Davies,* 168 N. Y. 89; *People* v. *American Ice Co.,* 120 N. Y. Supp. 443; *Cummings* v. *Union Blue Stone Co.,* 164 N. Y. 401; *People* v. *Klaw,* 106 N. Y. Supp. 341; *People* v. *Duke,* 44 N. Y. Supp. 336; 19 Misc. Rep. 292; *De Witt Wire Cloth Co.* v. *N. J. Wire Cloth Co.,* 14 N. Y. Supp. 277.) The federal Anti-Trust Law and the state Anti-Trust Law being both declaratory of the common law in their respective jurisdictions, authorities construing the federal Anti-Trust Law are applicable in construing the state Anti-Trust Law, and confirm our conclusion. (*Loewe* v. *Lawlor,* 208 U. S. 274; *Lawlor* v. *Loewe,* 235 U. S. 522; *E. S. R. L. D. Assn.* v. *U. S.,* 234 U. S. 600; *Montague* v. *Lowry,* 193 U. S. 38; *Irving* v. *Neal,* 209 Fed. Rep. 471; *Paine* v. *Neal,* 212 Fed. Rep. 259; *State* v. *Bd. of Trade,* 121 N. W. Rep. 395.) The plaintiffs being irreparably injured in their property rights by acts in violation of the state Anti-Trust Law, are entitled to an injunction.

(*Straus* v. *American Publishers' Assn.*, 177 N. Y. 473; 231 U. S. 222; 85 App. Div. 446; *Irving* v. *Neal*, 209 Fed. Rep. 471; *Paine* v. *Neal*, 212 Fed. Rep. 259; *People* v. *McFarlin*, 43 Misc. Rep. 591; 89 N. Y. Supp. 527; *Gill Engraving Co.* v. *Doerr*, 214 Fed. Rep. 111; *Kellogg* v. *Sowerby*, 190 N. Y. 370; *Park & Sons Co.* v. *Nat. D. Assn.*, 175 N. Y. 1; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443; 195 N. Y. 565; *Rourke* v. *Elk Drug Co.*, 75 App. Div. 145; *United States* v. *Addyston P. & S. Co.*, 85 Fed. Rep. 279.) The combination violates subdivision 6 of section 580 of article 54 of the Penal Law, forbidding conspiracies " to commit any act injurious to trade or commerce," and complainant is entitled to protection therefrom. (*Auburn Draying Co.* v. *Wardell*, 89 Misc. Rep. 501; *Irving* v. *Neal*, 209 Fed. Rep. 471; *Paine* v. *Neal*, 212 Fed. Rep. 259; *People* v. *McFarlin*, 43 Misc. Rep. 591; 89 N. Y. Supp. 527; *Gill Engraving Co.* v. *Doerr*, 214 Fed. Rep. 111; *State* v. *Minn. Milk Co.*, 144 N. W. Rep. 417; *People* v. *Dwyer*, 215 N. Y. 46; *Kellogg* v. *Sowerby*, 190 N. Y. 370; *People* v. *Sheldon*, 139 N. Y. 251; *Leonard* v. *Poole*, 114 N. Y. 371.) The combination violates subdivision 5 of section 580 of the Penal Law. (*People* v. *Davis*, 159 App. Div. 464; *Auburn Draying Co.* v. *Wardell*, 89 Misc. Rep. 501; *People* v. *McFarlin*, 43 Misc. Rep. 591; 89 N. Y. Supp. 527; *Newton* v. *Erickson*, 70 Misc. Rep. 291; 126 N. Y. Supp. 949; 144 App. Div. 939; 166 App. Div. 251; *Thomas* v. *M. M. P. Union*, 121 N. Y. 50; *Davis* v. *Zimmerman*, 36 N. Y. Supp. 303; *People* v. *Klaw*, 55 Misc. Rep. 72.) The defendants' combination violates section 530 of article 48 of the Penal Law. (*People* v. *Barondess*, 16 N. Y. Supp. 436; 133 N. Y. 649; 61 Hun, 571; *People* v. *Warden*, 130 N. Y. Supp. 698; 190 N. Y. 537; *People* v. *Hughes*, 137 N. Y. 29; *People* v. *Hawkins*, 157 N. Y. 1; *Davis* v. *Zimmerman*, 71 N. Y. S. R. 385; 36 N. Y. Supp. 304; *Matthews* v. *Shankland*, 56 N. Y.

Supp. 123; 25 Misc. Rep. 604; *People* v. *McFarlin,* 89 N. Y. Supp. 527; 43 Misc. Rep. 591; *State* v. *Glidden,* 55 Conn. 47; *Wyeman* v. *Deady,* 79 Conn. 414.) Section 582 of the Penal Law of the state of New York is declaratory of the common law and does not legalize the defendants' acts. (*Frank* v. *Herold,* 52 Atl. Rep. 152; *Erdman* v. *Mitchell,* 207 Penn. St. 79; *Goldberg* v. *Stablemen's Union,* 86 Pac. Rep. 896; *Branson* v. *Industrial Workers,* 95 Pac. Rep. [Nev.] 354; *Thacker Coal & Coke Co.* v. *Burke,* 53 S. E. Rep. 161; *People* v. *Davis,* 159 App. Div. 464; *Auburn Draying Co.* v. *Wardell,* 89 Misc. Rep. 501; *Thomas* v. *M. M. P. Union,* 121 N. Y. 50; *Matthews* v. *Shankland,* 56 N. Y. Supp. 123; 25 Misc. Rep. 604; *People* v. *McFarlin,* 89 N. Y. Supp. 527; 43 Misc. Rep. 591; *Schlang* v. *Ladies' Waist Workers,* 124 N. Y. Supp. 289; 67 Misc. Rep. 221.) The combination of the defendants to bring about the employment of members of their organization exclusively in their industry throughout an entire community, is unlawful. (*Montague* v. *Lowry,* 193 U. S. 38; *Nat. Protective Assn.* v. *Cummings,* 170 N. Y. 315; *Jacobs* v. *Cohen,* 183 N. Y. 207; *McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 130; 198 N. Y. 587; *Grassi Cont. Co.* v. *Bennett,* 174 App. Div. 244; *Schwarz* v. *I. L. G. Workers,* 68 Misc. Rep. 528; *Schlang* v. *L. W. Workers,* 67 Misc. Rep. 221; *Conners* v. *Connolly,* 86 Conn. 641; *Davis Machine Co.* v. *Robinson,* 41 Misc. Rep. 329; *Tunstall* v. *Stearns Coal Co.,* 192 Fed. Rep. 808.) The facts establish a combination to cause strikes against customers of plaintiffs for the purpose of preventing the sale of their products as long as they operate an open shop, and is, in effect, a secondary boycott of the plaintiffs, which is unlawful. (*Loewe* v. *Lawlor,* 208 U. S. 274; *Bossert* v. *Dhuy,* 166 App. Div. 251; *Purvis* v. *Local 500,* 214 Penn. St. 348; 63 Atl. Rep. 585; *Shine* v. *Fox Bros. Mfg. Co.,* 156 Fed. Rep. 357; *Huttig Sash & Door Co.* v. *Fuelle,*

143 Fed. Rep. 363; *Lohse Patent Door Co.* v. *Fuelle*, 114 S. W. Rep. [Mo.] 1001; *Booth* v. *Burgess*, 65 Atl. Rep. [N. J.] 226; *Irving* v. *Joint District Council*, 180 Fed. Rep. 896; *Newton* v. *Erickson*, 70 Misc. Rep. 291; 144 App. Div. 939; 165 App. Div. 930; *People* v. *McFarlin*, 89 N. Y. Supp. 527; 43 Misc. Rep. 591.)  A combination of traders to promote their own interests by suppressing the competition of rivals is illegal at common law, and it is immaterial whether the combination aims at one rival or a class of rivals.  (*Hawardin* v. *Y. & L. Coal Co.*, 111 Wis. 545; *Bailey* v. *Assn. of Plumbers*, 52 S. W. Rep. 853; *Walsh* v. *Assn. of Master Plumbers*, 71 S. W. Rep. 455; *Gatzow* v. *Burning*, 106 Wis. 1; *Martell* v. *White*, 185 Mass. 255; *Boutwell* v. *Marr*, 71 Vt. 1; *E. P. Club* v. *Blosser*, 122 Ga. 509; *Brown & Allen* v. *Jacobs Pharmacy*, 41 S. E. Rep. 553; *Purington* v. *Hinchliff*, 76 N. E. Rep. 47; *Doremus* v. *Hennessy*, 176 Ill. 608.)

CHASE, J.  The plaintiffs are copartners engaged in the borough of Brooklyn, city of New York, in the manufacture, purchase and sale of doors, sash, blinds, trim, lumber and other kinds of woodwork.  They employ from five to six hundred persons in their factories in the production of such woodwork, but do not perform any work in the installation of the woodwork so manufactured by them.  All of such woodwork is sold to builders. The defendants are officers, representatives and agents of the United Brotherhood of Carpenters and Joiners of America and of its branches in the city of New York and vicinity.  The United Brotherhood of Carpenters and Joiners of America, hereinafter called the Brotherhood, is a voluntary unincorporated association of workmen.  It has a membership of about 200,000 journeymen carpenters with headquarters at Indianapolis, Indiana, subdivided into about 1,900 local branches, also voluntary unincorporated associations, over seventy of which local associations are within the limits of the city of New York.

All manufacturers of woodwork who do not operate under an agreement with said Brotherhood or one of its branches and do not agree to employ union carpenters exclusively, are known by the defendants as non-union, unfair or open shop manufacturers and their products are known as non-union, unfair or open shop materials.

The plaintiffs operate an open shop, selecting their employees without discrimination against any person on the ground that he is or is not a member of the local union, and pursue this policy as a matter of principle and not for mercenary reasons, and for many years the relations between the plaintiffs and their employees were mutually satisfactory. The Brotherhood issues a monthly paper, its official organ, called *The Carpenter* and holds biennial conventions attended by delegates elected from the local unions. Since 1904 the Brotherhood has been engaged in a general combination among other things to prevent the employment of non-union carpenters or woodworkers in woodworking factories, or in erecting certain kinds of woodwork and has adopted rules which forbid its members from working for any employer who employs any so-called non-union carpenters, and from working on or in connection with any building where materials are used which are purchased from any employer who employs non-union carpenters, and the constitution of the Brotherhood provides that it shall be the duty of local unions to prevent its members encouraging the use of any unfair material by handling the same.

From time to time the Brotherhood in connection with the joint district council of the carpenters' union have circulated a letter which in part is as follows:

" *To Owners, Architects, Contractors, and Builders of New York City and Vicinity:*

" GENTLEMEN.— In order to avoid any labor trouble on jobs you are interested in we deem it necessary to request you to stipulate in all your contracts a clause

guaranteeing the employment of recognized union men, also a clause requiring in the execution of all contracts for carpenter work the employment of union made trim, mantels, parquet flooring, and other shop made carpenter work. This applies particularly to all classes of kalamein and metal covered work.

" We desire to inform you that unless this material has been constructed under strict union conditions we shall refuse to handle it. It being a well known fact that the agents of unfair and non-union firms resort to mis-statements in order to obtain contracts in this city we recommend that before placing contracts with any firm not on this list you communicate with this organization regarding the union standing of said firm.

" Stipulating in your contract that your trim, etc., must bear this union label (here appears a cut of label) will avoid all complications."

The rules of the Brotherhood provide in substance that if any member is proven guilty of working with non-union carpenters or on material made in a shop where non-union carpenters are employed, he shall be subject to fine or expulsion from the association.

The defendants having attempted to enforce the rules of the Brotherhood against its members handling non-union made woodwork, this action was brought by the plaintiffs to obtain an injunction against the defendants taking (in substance) any action affecting the plaintiffs and the building material made in their mills.

In *National Protective Association* v. *Cumming* (170 N. Y. 315, 320) Chief Judge PARKER stated that he would assume that certain principles of law laid down in the opinion of Judge VANN in that case are correct, namely: " It is not the duty of one man to work for another unless he has agreed to, and if he has so agreed but for no fixed period, either may end the contract whenever he chooses. The one may work, or refuse to work, at will, and the

other may hire or discharge at will.   The terms of employment are subject to mutual agreement, without let or hindrance from any one.   If the terms do not suit, or the employer does not please, the right to quit is absolute, and no one may demand a reason therefor.   Whatever one man may do alone, he may do in combination with others, provided they have no unlawful object in view. Mere numbers do not ordinarily affect the quality of the act.   Workingmen have the right to organize for the purpose of securing higher wages, shorter hours of labor, or improving their relations with their employers.   They have the right to strike; that is, to cease working in a body by prearrangement until a grievance is redressed, provided the object is not to gratify malice or inflict injury upon others, but to secure better terms of employment for themselves.   A peaceable and orderly strike, not to harm others, but to improve their own condition, is not in violation of law."

After quoting from the opinion of Judge VANN, as stated, he added: " Stated in other words, the propositions quoted recognize the right of one man to refuse to work for another on any ground that he may regard as sufficient, and the employer has no right to demand a reason for it.   But there is, I take it, no legal objection to the employee's giving a reason, if he has one, and the fact that the reason given is, that he refuses to work with another who is not a member of his organization, whether stated to his employer or not, does not affect his right to stop work nor does it give a cause of action to the workman to whom he objects because the employer sees fit to discharge the man objected to rather than lose the services of the objector.   The same rule applies to a body of men who, having organized for purposes deemed beneficial to themselves, refuse to work.   Their reasons may seem inadequate to others, but if it seems to be in their interest as members of an organization to refuse

longer to work, it is their legal right to stop    *   *   *.
And whenever the courts can see that a refusal of members
of an organization to work with non-members may be
in the interest of the several members, it will not assume,
in the absence of a finding to the contrary, that the
object of such refusal was solely to gratify malice and to
inflict injury upon such non-members.    *   *   *   Those
principles concede the right of an association to strike
in order to benefit its members; and one method of bene-
fiting them is to secure them employment, a method
conceded to be within the right of an organization to
employ."

Judge McLAUGHLIN, now of this court, then in the
Appellate Division, writing in the *National Protective
Association* v. *Cumming* case in that court (53 App.
Div. 227, 230) said: "The Enterprise Association
refused to permit its members to work upon any job
where the members of the plaintiff were employed, and
informed the employer in each instance that unless the
members of the plaintiff were discharged its members
would strike or, in other words, abandon the job, which
they did, or threatened to do, in the three instances
specified in the complaint; that they neither used force
nor did anything tending to a breach of the peace, other
than that included in its threat to order a strike or with-
draw its members, as well as the members of the other
associations allied with it, from the work on which they
were engaged.    *   *   *   This is all that the Enterprise
Association did.    It was seeking to obtain employment
for its own members, and wherever it found places filled
by members of the plaintiff association it procured their
discharge in order that the employment might be given
to members of the Enterprise Association, and in case
that was not done, they either withdrew or threatened
to withdraw from the work."

It is unnecessary in the case now under consideration

to hold that in all cases and under all circumstances, whatever a man may do alone he may do in combination with others, but it was clearly established in the *National Protective Association* case that workingmen may organize for purposes deemed beneficial to themselves and in that organized capacity may determine that their members shall not work with non-members or upon specified work or kinds of work.

It was not illegal, therefore, for the defendants to refuse to allow members of the Brotherhood to work in the plaintiffs' mill with non-union men. The same reasoning results in holding that the Brotherhood may by voluntary act refuse to allow its members to work in the erection of materials furnished by a non-union shop. Such action has relation to work to be performed by its members and directly affects them. The voluntary adoption of a rule not to work upon non-union made material and its enforcement differs only in degree from such voluntary rule and its enforcement in a particular case. Such a determination also differs entirely from a general boycott of a particular dealer or manufacturer with a malicious intent and purpose to destroy the good will or business of such dealer or manufacturer. An act, when done maliciously and for an illegal purpose, may be restrained; and held to be within the bounds of reasonable business competition when done in good faith and for a legal purpose. (See Ruling Case Law, vol. 16, pp. 431, 432 and 433.)

It appears by findings that are uncontrovertibly established by reason of the unanimous affirmance of the Special Term by the Appellate Division that it was not the intent and purpose of the defendants in this case to injure the good will or business of the plaintiffs as individuals or of non-union manufacturers generally. In refusing to work on non-union made material, they were conserving their interests as individuals and as members

of the Brotherhood, and in so doing necessarily interfered to some extent with non-union manufacturers. Such interference necessarily resulted to some extent also in the *National Protective Association* case, and such fact did not prevent the court sustaining the action of the defendants therein. The importance of the facts in each case involving individual or associate action affecting the relations of employers and employees is such that even although it materially increases the length of this opinion, we quote some of the important findings mentioned:

" 1. The United Brotherhood of Carpenters and Joiners of America is a voluntary association and trade union of carpenters whose members consist of so-called ' outside carpenters ' who work on buildings, and ' inside carpenters,' who work in mills.

" 7. That the members have adopted rules *antedating any strikes* against plaintiff's material, by which outside members are not to work on mill products not made in mills manned by their inside members.

" 8. That said rules were not adopted with the plaintiff in view, but were intended to apply generally to the products of all non-union mills.

" 10. The non-union mills, including that of the plaintiff, *compete in their products with the mills manned by the members of said United Brotherhood.*

" 11. That the said United Brotherhood has established a union or minimum rate of wages, and fixed certain hours per day for its members to work, but said union rate of wages does not prevent employers from paying a higher rate of wages to any or all members whom they employ.

" 14. The more mills that are unionized the more chance have the outside and inside carpenters of said United Brotherhood to obtain work at union wages and under union conditions.

" 17. That it conduces to the betterment of the con-

dition of the members of said United Brotherhood not to install the mill products of plaintiff in buildings.

"18. That the defendants believe it would be to their advantage not to handle the mill products of the plaintiff, and in the matters complained of have been actuated by that belief and motive.

"19. That it would tend to increase the sale of union mill' products made by the inside carpenters, members of the United Brotherhood and so secure them in work and increase the chances of outside members to obtain work in union mills, for the outside members to refuse to handle the non-union mill products of the plaintiff.

"21. That none of the members of said United Brotherhood who refuse to install any of the mill products of plaintiff were under contract to give their services for any particular period.

"24. There was no violence, nor any threat of violence, on the part of the defendants in connection with any of the acts complained of.

"25. That no threat, coercion or intimidation was used by any of these defendants to induce the union carpenters to quit work where strikes against plaintiff's material occurred, except the enforcement of the by-laws.

"26. That none of the defendants interfered in any way to prevent the different employers herein whose jobs were struck from procuring non-union carpenters to continue their work.

"29. That the members of the United Brotherhood quit work on all the jobs complained of because of their said rules to work only on union material made by their own members, and *of their own volition.*

"30. That in all matters complained of herein the defendants acted without malice towards plaintiff.

"32. The primary motive and purpose the defendants had in view in all the matters complained of regardless of whether their acts would be in furtherance of such

motive and purpose — or not — were to benefit their fellow-members in said brotherhood by procuring them work and helping the sale of the union-made mill products of their fellow-members in mills.

"35. The defendants have refused to install the mill products of other non-union mills than that of the plaintiff.

"43. That to compel the members of said United Brotherhood to work on the mill products of the plaintiff limits the sale of the union mill products made by its members, and, to that extent tends to throw them out of work.

"44. That generally the union rate of wages is higher and the hours of work shorter per day than in non-union mills.

"46. That the union rate of wages and hours tends to a higher and better standard of living than the non-union rates and hours.

"49. That the hours of labor in plaintiff's mill are more than eight hours per day."

The trial court also found "That said Brotherhood has adopted and sought to enforce and in many instances has enforced rules which forbid and prevent its members from working for any employer who employs any so called non-union carpenters and from working on or in connection with any building where materials are used which are purchased from any employer who employs any non-union carpenters."

In considering this finding of the court we must keep in mind the fact that the action of the Brotherhood did not interfere with any contract between employer and employee. Its action was open and clearly defined and its enforcement was not designed to and did not include any force, fraud, threat or defamation. Its action was voluntary and concerned - labor competition in which the association and its members are vitally interested.

The voluntary adoption by an association of employees

of reasonable rules relating to persons for whom and conditions under which its members shall work is not illegal at common law. (*National Protective Association* v. *Cumming, supra; Macauley Brothers* v. *Tierney,* 19 R. I. 255; *Bohn Manufacturing Co.* v. *Hollis,* 54 Minn. 223; *J. F. Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581; Martin Modern Law of Labor Unions, 109; *Gill Engraving Co.* v. *Doerr,* 214 Fed. Rep. 111; *State* v. *Van Pelt,* 136 N. C. 663; Ruling Case Law, vol. 16, 450.)

Neither is the enforcement of such rules by the association through fines or by expulsion from the association illegal. Members are thus simply required to obey rules of the association so long as they remain members thereof. (*Bohn Manufacturing Co.* v. *Hollis, supra.*)

An association of individuals may determine that its members shall not work for specified employers of labor. The question ever is as to its purpose in reaching such determination. If the determination is reached in good faith for the purpose of bettering the condition of its members and not through malice or otherwise to injure an employer the fact that such action may result in incidental injury to the employer does not constitute a justification for issuing an injunction against enforcing such action.

Workingmen cannot be compelled to work when by so doing their position as workingmen will be injured, simply because if they do not continue their work a manufacturing employer will not be able to sell as large a quantity of material as he otherwise would and thus his good will, trade or business may be affected. (See extended discussion in Harvard Law Review, vol. 20, pp. 253, 345, 429.) " The United States Supreme Court has recently had before it the case of *Paine Lumber Company* v. *Neal,* 244 U. S. 459, 471 (advanced sheets, August 1, 1917) which was an action to enjoin the United Brotherhood of Carpenters and Joiners of America from con-

spiring to have its members refuse to work upon material made by the plaintiffs in that action because not made by union labor, and also to enjoin them from enforcing bylaws intended to prevent its members from working upon what is called unfair material. The injunction was denied. Justice HOLMES speaking for the court in affirming the judgment appealed from, and referring to the merits of the controversy, said, ' As this Court is not the final authority concerning the laws of New York we say but a word about them. We shall not believe that the ordinary action of a labor union can be made the ground of an injunction under those laws until we are so instructed by the New York Court of Appeals. *National Protective Association of Steam Fitters & Helpers* v. *Cumming*, 170 N. Y. 315. Certainly the conduct complained of has no tendency to produce a monopoly of manufacture or building since the more successful it is the more competitors are introduced into the trade. Cases like *Kellogg* v. *Sowerby*, 190 N. Y. 370, concerning conspiracies between railroads and elevator companies to prevent competition, seem to us very clearly not to have been intended to over-rule the authority that we cite, and not to have any bearing on the present point."

The facts in the *Paine Lumber Company* case were substantially the same as the facts in the case now before us, and we understand the Supreme Court of the United States to assert in substance and effect that an ordinary common law action should not, even considered with the statutes now in force, be sustained in this state upon the facts shown in that case, or in the case now before us.

The decision in this case also contains a finding as follows: " That in the year 1910 the defendants entered into a combination to organize all the non-union mills of Brooklyn and a resolution was passed at the convention of the United Brotherhood in 1910 to carry out that campaign in the borough of Brooklyn.

" That subsequently and on or about September 15, 1910, four or more strikes were called in one day against building operations in Brooklyn * * * and the carpenters employed * * * quit work on orders of the business agents."

Upon all of the findings before us the statement in the finding that there was a " combination to organize all the non-union mills of Brooklyn " simply means that the Brotherhood determined to carry out the provisions of its constitution relating to non-union made material by insisting upon its enforcement and by imposing the penalties provided thereby in case of failure of any of its members to comply therewith. The further statement as to the " orders of the business agents " simply means that the representatives of the Brotherhood called the attention of union carpenters employed on buildings where non-union material was being erected to the consequences to them as members of the Brotherhood in case they continued such employment.

The importance of the findings of fact in each case is shown in the records before us herein. Justice BLACK-MAR in *Newton Co.* v. *Erickson* (70 Misc. Rep. 291) granted an application for a preliminary injunction while then Justice CRANE (77 Misc. Rep. 592) in this case denied an application to punish one of the defendants for contempt for an alleged disobedience of the preliminary injunction. The form of the injunction in each case was the same. It will be seen that the conclusions reached by the justices respectively were based upon the facts as they severally appeared and were construed by them. Justice BLACKMAR a little later (*A. P. Hogle Co.* v. *Mulvaney,* N. Y. L. J., May 11, 1912) referred to the *Newton* case on the application for a preliminary injunction and to the decision in the *National Protective Association* case and said that the Newton decision made by him was based upon his finding that

the defendants intended to injure the business of the plaintiff. It is now unanimously found that the defendants did not have a primary intent to injure the plaintiffs.

Upon all the findings of fact in this case the court found as conclusions of law:

"1. It was lawful for the members of the carpenters' unions to agree, and embody that agreement in a constitution and by-laws, that they would not work upon any mill products which were not union made.

"2. It was lawful for the members of said unions to adopt by-laws by which each agreed he should be subject to a fine if he was found working knowingly on non-union mill products.

"3. It was lawful for these unions to elect and employ certain of their members to notify the other members as to whether the mill work they were engaged upon was union or non-union.

"4. It was lawful for the union members to quit work in a body whenever they ascertained that non-union mill work was presented to them to work upon.

"5. Their right to quit work in a body on the mill work of the plaintiff would not be lost or changed because the striking men had in view the fact that such a strike would tend to reduce the sales of the plaintiff's mill products.

"6. The right to quit work in a body on the mill work of plaintiff would not be lost or changed because the striking men had in view the fact that such a strike would tend to increase the sales of the union made mill products by their fellow-members in mills.

"7. The plaintiff has no right to have the services of the union carpenters in the erection of its mill work if they do not want to work upon it.

"8. The union members have the right to inform any builder that they will only work on mill products made by their own members in mills.

"9. They have the same right to so inform the builder

before he purchased mill products as when he asked them to work upon and install mill products."

Notwithstanding the quoted and other conclusions of law found by the court in this case which would seem to preclude a judgment in favor of the plaintiffs the court found as follows:

" That the combination of the defendants to prevent the sale, use and installation of the plaintiff's wood materials by causing all union carpenters to refuse to handle said materials or work upon any building where said materials were being used, is illegal.

" That the combination of the defendants, as set forth in the findings of fact, constitutes an illegal conspiracy.

" That the combination of the defendants, as set forth in the findings of fact, and the acts in furtherance thereof, constitutes an illegal conspiracy to injure the plaintiff contrary to common law."

By reading the opinion of the court at the Special Term, adopted at the Appellate Division (166 App. Div. 251, 256), with the findings and conclusions of law, it appears that it was the intention of the court to hold that the facts found would not justify a judgment in favor of the plaintiffs except so far as the defendants discriminated against the plaintiffs' mill and refused to handle the plaintiffs' material while at the same time continuing to handle material from other non-union mills.

The court say: " The strike committee having decided that plaintiffs' shop carpenter work is obnoxious to its organization, and having a right to refuse to work with or without giving any reason, here maintains that it may strike against the material made by plaintiffs but for a time suffer their non-union rivals to continue their production, at least until after plaintiffs' mill shall be reduced to submission. Thereby the labor organization may be said to act affirmatively and aggressively, as the damage to the good will and business of the plain-

tiffs is the specific object aimed at, the direct result sought. Granted that the selection of the plaintiffs was made with no personal hostility, and was an act to affect ultimately the whole body of non-union mill owners, the destructive result to the plaintiffs is not mitigated."

We do not think that the conclusion of the court is sustained by the findings of fact in the case. A judgment was, however, entered, the affirmative provisions of which are quoted herewith, preceding the opinion. The first paragraph thereof adjudges that the defendants shall not send to any customer or prospective customer of the plaintiffs any letter, circular or communication, printed, written or oral, which in terms or by inference suggests that labor troubles will follow the use of materials purchased from plaintiffs or from any person, firm or corporation declared unfair or whose material does not bear the union label. Upon all the findings before us it is clear that the " labor troubles " therein referred to, simply mean that if non-union made materials are used the members of the Brotherhood will refuse to install the same.

The second paragraph thereof adjudges that the defendants shall not direct, require or compel any person by by-law, rule or regulation or any act thereunder to cease working for another because they use material purchased from non-union shops. And the third paragraph thereof enjoins the defendants from inducing any workmen in their trades to quit work on any building because non-union carpenters are there employed to install material which comes from non-union shops. All of the acts enjoined are under the findings of fact in this case lawful acts done for lawful purposes.

We think that the rules laid down by this court in the *National Protective Association* case require a reversal of the judgment in favor of the plaintiffs upon the findings before us. When it is determined that a labor organiza-

tion can control the body of its members for the purpose of securing to them higher wages, shorter hours of labor and better relations with their employers, and as a part of such control may refuse to allow its members to work under conditions unfavorable to it, or with workingmen not in accord with the sentiments of the labor union, the right to refuse to allow them to install non-union made material follows as a matter of course, subject to there being no malice, fraud, violence, coercion, intimidation or defamation in carrying out their resolutions and orders.

Voluntary orders by a labor organization for the benefit of its members and the enforcement thereof within the organization is not coercion. The members of the organization as we have already stated who are not willing to obey the orders of the organization are at liberty to withdraw therefrom. The bounds beyond which an association of employees may not as a general rule go in controlling its members in their dealings with employers are not easily determined. They cannot at least extend beyond a point where its or their direct interests cease. There is a material difference in the power of an association so far as it affects its primary or secondary interest. Where the acts of an employee or employees in their individual or associate capacity are reasonably and directly calculated to advance lawful objects, they should not be restrained by injunction.

A strike or boycott may be legal or illegal according to the acts involved therein (*Gray* v. *Building Trades Council*, 91 Minn. 171; *State* v. *Van Pelt, supra; Gill Engraving Co.* v. *Doerr*, 214 Fed. Rep. 111; *Mills* v. *U. S. Printing Co.*, 99 App. Div. 605; affd., 199 N. Y. 76. See, also, opinion of ANDREWS, J., in *Seubert, Inc.*, v. *Reiff*, 98 Misc. Rep. 402), so an action for a direct and primary purpose in the interest of individuals or a combination of individuals taken in good faith to advance the interest of the individuals or combination

may be lawful, while a remote and secondary action which carries with it a degree of malice as a matter of law is illegal. In the case now before us if the defendants had called upon the public generally to discontinue using the plaintiffs' material and had sought to prevent all persons by communications, written or otherwise, from dealing with the plaintiffs, their acts would have been illegal.

It does not appear from the record that the defendants in any way interfered with the trade or business of the plaintiffs, except that the members of the Brotherhood were by their voluntary action required to decline using material made in non-union shops and announcement was made of such intention that the same might be known by contractors in advance of the contracts to be entered into in connection with the erection of the work. Such action of the defendants did not extend beyond such refusal to install non-union made material and so far as it amounted to either a strike or a boycott, it directly affected the 'Brotherhood and its members.

An examination of the many cases called to our attention by the plaintiffs will show that in most instances the acts criticized and condemned were not directly connected with the purpose sought to be conserved by the defendants therein. A few of such cases are as follows: *Loewe* v. *Lawlor* (208 U. S. 274); *Bailey* v. *Assn. of Master Plumbers* (103 Tenn. 99; *S. C.,* 52 S. W. Rep. 853); *Rocky Mountain Bell Telephone Co.* v. *Montana Fed. of Labor* (156 Fed. Rep. 809); *Barnes* v. *Chic. Typ. Union* (232 Ill. 424); *Iron Moulders Union* v. *Allis-Chalmers Co.* (166 Fed. Rep. 45).

The judgment of the Appellate Division should be reversed and the complaint dismissed, with costs in all courts.

COLLIN, HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur; CRANE, J., takes no part.

Judgment reversed, etc.