WILLSON & ADAMS COMPANY and Others, Plaintiffs, *v.* PATRICK D. PEARCE, etc., and Others, Defendants.

Supreme Court, Westchester County, August 10, 1929.

*Gleason, McLanahan, Merritt & Ingraham* [*Walter Gordon Merritt* of counsel], for the plaintiffs.

*Sydney A. Syme*, for the defendants.

TAYLOR, J.   The plaintiffs, twenty-eight in number, are dealers in building materials, conducting business in Westchester county, some of them upon a large, and others upon a smaller scale.   The amount of their gross annual business varies from $1,500,000, the highest, to $150,000, the lowest.   Each has a substantial capital investment. Some have very large investments.   Many of the concerns have been established for years.   The good will and business of each plaintiff constitutes a valuable asset.   Each plaintiff employs non-union drivers (chauffeurs or teamsters), helpers, and yardmen. Each has a yard from which materials are sold, excepting one.   Each annually makes many deliveries by truck to customers — in the aggregate the plaintiffs average 1,000 deliveries per working day. Each plaintiff had outstanding contracts for materials to be supplied

and unfulfilled at the time when the injunction *pendente lite* herein was granted in May, 1925. Some of the plaintiffs operate mills, one of them, Kapp & Nordholm Company, operates a mill only. In these mills union workmen are employed — members of the United Brotherhood of Carpenters and Joiners of America. No plaintiff does any actual work upon any building operation, and, therefore, is not in that way in direct contact with the trades working thereon. The plaintiffs simply deliver materials to the different jobs. Before the incidents which immediately preceded the injunction herein, no plaintiff had labor difficulties with employees. Only a few of the plaintiffs actually had difficulties then; the injunction prevented similar incidents in the case of each of the other plaintiffs.

The defendants, excepting McGeory and Wildberger, are officers or business agents of the local labor unions involved, viz., (1) of teamsters, etc., (2) of carpenters, etc., (3) of bricklayers, etc., and (4) of hodcarriers, etc. These (excepting teamsters) are among the building trades of the county. The defendant Pearce, whose activities on behalf of the local teamsters' union are here particularly involved, is the business agent of that union (Local No. 456). His activities set in motion the drastic actions of the Building Trades Council hereinafter mentioned. The local unions are, in effect, parties to this action by representation. (General Assn. Law, § 12 *et seq.* [added by Laws of 1920, chap. 915]; *Auburn Draying Co.* v. *Wardell*, 227 N. Y. 1, p. 4.) The defendants McGeory and Wildberger are respectively president and treasurer of the voluntary association called the Building Trades Council of Westchester County, the federation composed of delegates (business agents), sixty-seven in number, from the local unions of the county, including those enumerated in the title. Said council elects its own officers. It has power to call, and upon occasion, it is conceded, it has called strikes of craftsmen, members of the represented unions, upon building operations. In law, it is the agent of those unions in so doing. If a grievance of one craft, relating to a building operation, is filed, the council may vote, and frequently has voted, " support " or assistance by other member trades; the council has called out on strike, in certain instances, crafts working on a building, whether the alleged grievance directly affected them or not. As the evidence warrants, and indeed requires, the finding that the said building trades are practically 100 per cent unionized, it is perceptible that the said council is a very powerful body, if its acts are within the law, and that it constitutes serious menace to property rights, if its acts are illegal and result in trespasses.

In effect, in this action for an injunction to restrain alleged unlawful acts of the defendants and of the members of the council and

local unions, done and/or threatened as against the plaintiffs, the latter allege, and the defendants deny, that the defendants and said members, since April, 1925, until restrained *pendente lite*, have been in a combination or conspiracy (1) to injure the good will, trade, and business of each plaintiff and (2) to prevent each plaintiff from conducting business until such time as such plaintiff shall compel the laborers, teamsters, and chauffeurs, so employed and used in such plaintiff's handling and delivery of materials to customers, to become members of Local 456, the Teamsters' Union, and until such time as such plaintiff shall refrain from employing non-members thereof. It is fair to state that the injunction, which has been extant during the considerable period during which the action has been pending, has been respected by the defendants both in letter and in spirit, and to this extent, at least, the defendants are entitled to commendation for having performed that duty.

The activities of the defendants cause this case to bear, in certain fundamental respects, at least some resemblance to one decided by our highest court (*Auburn Draying Co.* v. *Wardell*, 227 N. Y. 1). It must be admitted, however, that the case at bar does not present the rather aggravated features which characterized the acts of defendants in the case cited, and which, undoubtedly, was strongly influential with the court in arriving at its decision to issue the injunction therein. Indeed, what was done by the defendants in the case at bar was, undoubtedly, done by advice of learned counsel that this case, in its facts would be distinguishable from the *Auburn Draying Co.* case, which presented such a decided invasion of the rights of the plaintiff therein. At all events, the principles of law set forth in the *Auburn Draying Co.* case, as well as those declared in *Bossert* v. *Dhuy* (221 N. Y. 342), will be helpful, if not decisive, in the disposition of this litigation.

It is charged by the plaintiffs and denied — in some instances in a qualified way — by defendants (1) that the council, acting for all defendants and union members, has called strikes of all trades of building operations to which plaintiffs through non-union drivers or chauffeurs, have delivered materials, regardless of the fact whether such trades used the delivered materials or not; (2) that in some instances strikes have been called upon other jobs of a given contrator, even though such material handled by non-union drivers had *not* been delivered to the other jobs; (3) that threats have been made to persons conducting building operations that strikes would be called of all trades thereon if materials furnished by a given plaintiff were used in the operations — this because the delivery agencies of the given plaintiff were non-union in character; (4) that willful attempts have been made to induce breaches of contracts for

materials between plaintiffs and their customers, builders; and (5) that defendants have tied up operations in instances where builders have not complied with the defendants' attempts asserted by plaintiffs to be unlawful. In my opinion these charges are sustained by the evidence.

The plaintiffs claim, and defendants deny, that plaintiffs have suffered irreparable injury to their good will, trade and business, and that further injury of like character is to be anticipated reasonably, unless the acts of defendants, which are threatened and which are like in character to those already done, are restrained by judicial fiat. If the acts complained of are illegal, it is clear that the damages caused by them to the plaintiffs are not capable of exact estimate or computation, and that equitable intervention is proper. No money damages may be awarded upon the proofs herein.

The credible evidence demonstrates the following facts, some of which I have referred to already, and all of which are found: (a) Each plaintiff prior to the commencement of this action employed non-union drivers, helpers and yardmen to handle its materials and to effect deliveries thereof to building operations, under contracts, express or implied, between such plaintiffs and the builder. (b) Some of the plaintiffs operated mills for the fabrication of woodwork; in every instance union labor was employed in the mills. (c) Each plaintiff, before the commencement of this action, had operated that plaintiff's plant for a considerable period of time without strikes or other labor difficulties with its employees, with whom such plaintiff was in harmony. (d) In or about April, 1925, the defendants, acting in concert, determined to compel those, including the plaintiffs, conducting non-union yards (as far as the handling of material therein was concerned) and making deliveries by non-union agencies, to unionize their yards and deliveries; this was to be done by pressure exerted by actions of the council, upon the plaintiffs, by a process which obviated the troublesome necessity of personal importunity by union representatives of the laborers, which importunity would involve, on the part of the former, oral persuasion of the laborers to join the union, and also the setting forth of the advantages of such membership, which importunity and persuasion might, or might not, result in applications for membership; the defendants' idea was to force the plaintiffs to organize their yards for the Teamsters' Union; the city of Yonkers, for many years, had been quite thoroughly organized by the Teamsters' Union; and this was an attempt by Pearce and his union, under the authority of the international parent organization of teamsters, to organize the balance of the county. The method pursued, if it had no other merit (from defendants' standpoint), was calculated to produce the

desired result of unionization with the minimum of effort upon the part of the local, for clearly, if the conceded acts of the defendants are lawful, the plaintiffs must, of necessity, obey the demands of this (in that event powerful) combination to unionize the workers in question, or in the alternative reduce or discontinue their respective businesses with consequent impairment, or perhaps total destruction, of plaintiffs' property values and rights.

I find from all the evidence that it was the purpose of the defendants, so acting in combination and conspiracy, to compel such unionization by means of injury actually inflicted, before the injunction, in some degree upon the business interests of several of the plaintiffs, and by injury intended to be inflicted upon such interests of all of the other plaintiffs and of dealers in the county similarly situated, the infliction of which, however, by the defendants was prevented, as far as the plaintiffs are concerned, by the injunction herein.

The question to be determined is whether the said acts of the defendants done and/or threatened, as they appear without practical dispute in the evidence and from the frank avowals of the defendants' counsel and witnesses on the trial, are countenanced by law. A distinguished colleague decided this question in the negative. A judgment enjoining the questioned activities was entered, but later reversed (218 App. Div. 865), in a memorandum in which the learned Appellate Division stated: "That the findings of of fact are of such an inconsistent character that we are unable to uphold the judgment in the present state of the record." No intimation was given as to the merits of the controversy, which, in my opinion, is still open for determination by this court upon its merits. The appellate court, however, omitted to dismiss the complaint upon those findings favorable to defendants (*City of Buffalo v. Delaware, L. & W. R. R. Co.*, 190 N. Y. 84, at p. 98), but, in the interests of justice, ordered a new trial and added: "At which it may be determined by the trial court whether or not the primary purpose of the defendants was unlawful, and with the object of injuring or destroying plaintiffs' business "— a plain intimation to this court that the questions of defendants' primary purpose and object were material ones. I will, therefore, determine such questions. (See *Overseas Storage Co. v. Chlopsek*, 209 App. Div. 834.)

The acts of the defendants, as the record discloses, and their purposes, as I find them to have existed (some of which features I have already adverted to), may be summarized as follows:

(a) Between 1923 and 1925, the defendants, acting through the council, called strikes of all trades on various jobs to which there were non-union deliveries by persons other than plaintiffs. In all of

these cases settlements were in effect forced satisfactory to the defendants. In or about April, 1925, certain jobs to which certain of the plaintiffs were supplying materials were struck as to all trades thereon, because of (conceded) non-union deliveries. These strikes involved not only trades upon the operations which used the materials " contaminated " by the non-union handling, but, as well, that one which used it. To illustrate the situation it may be said that the delivery by a plaintiff of a bag of sand would or might result, not only in a strike of the artisans using the sand in their work, but of carpenters and others who did not use it at all. The job thus circumstanced would thus be " pulled " and the paralysis of work thereon consummated to the manifest detriment of the builder, who, it is clear, would need little further in the way of persuasion to convince him that he would act in his own interest in not dealing further with that plaintiff, even to the extent of breaking his contract with such plaintiff for materials.

(b) A meeting of the representatives of the plaintiffs' association was called at which the defendants McGeory and Pearce represented the defendants generally. This meeting was had with a view of settling the difficulties entailed in the strikes. At such meeting McGeory, with the approval of Pearce, repeatedly stated in effect that these strikes were mere incidents in a general plan to force unionization of all of the yards in the county; that the calling out of the trades not associated with the teamsters was for the same purpose; that the entire yards must be organized; that the unions did not have time to do the organizing, and that the employers (plaintiffs) must do it. The defendants' position was stated with emphasis, and some of those present say that it was accompanied by considerable profanity on the part of McGeory, who denies that he was profane; but at all events what happened at the conference was calculated to leave in the minds of those representing the plaintiffs no doubt whatever of the combined defendants' purpose to injure the plaintiffs in their business in order to compel such unionization of their yards by the plaintiffs. After this meeting the plaintiffs applied for and received injunctive relief *pendente lite*.

(c) The evidence discloses also that in at least one instance Pearce suggested to a builder the names of dealers having union yards, with whom the builder might deal instead of purchasing from a certain plaintiff; and, as indicating the real purpose and object of the defendants, I find that in 1926 one Mackay, a builder in Yonkers, who was conducting three jobs, had non-union deliveries made to one of these jobs by one Rodan. Through the action of the council all trades on all three jobs were called out on strike, as I find, because of the " violation " of non-union deliveries to one job only. Mackay

is not a plaintiff herein and was not protected by injunction. At least one other instance of similar character appears. I have not overlooked the suggestion of the defendants that other labor difficulties caused the strikes on these jobs, which suggestion I reject.

Upon the whole case I determine (a) that, whatever may have been their secondary purpose, the primary purpose of the defendants, acting in concert in their said activities, was wholly unlawful; (b) that their real object was to injure and to threaten to injure, to destroy and to threaten to destroy, the business of the plaintiffs by making it undesirable for plaintiffs' customers to do business with plaintiffs — all to the end that the plaintiffs, in order to relieve themselves and their property rights from the detrimental consequences of such acts, would compel, as demanded by the defendants, the teamsters and other persons in plaintiffs' employ handling goods to join Local No. 456, the Teamsters' Union; and (c) that the existence of such primary purpose and of such object make this a proper case for a permanent injunction restraining the defendants from prosecuting further their said illegal activities.

The law relating to what workingmen, singly or in combination, may properly do and refrain from doing, may be stated, at least in part, as follows:

Either employer or workman, where the employment is for no fixed period, may terminate the contract; the workman's right to quit is absolute; no one may demand a reason therefor; what he may do alone he may do in combination with others *provided they have no unlawful object in view;* workmen have a right to organize to secure higher wages, shorter hours of labor, and to improve their relations with their employers; they have the right to strike, *if the object is not to gratify malice or inflict injury upon others*, but to secure better terms of employment for themselves; a peaceable and orderly strike, *not to harm others*, but to improve their own condition, is not illegal. The foregoing are in effect the principles enunciated in *National Protective Assn. of Steam Fitters & Helpers* v. *Cumming* (170 N. Y. 315, 320), reiterated in *Bossert* v. *Dhuy* (*supra*) and in effect also in the opinion in the *Auburn Draying Co. Case* (*supra*). The italicized portions above and in the quotation *infra* from the opinion in the *Bossert* case declare what are the purposes and objects inhibited by law. In *Bossert* v. *Dhuy* (221 N. Y. 342, at p. 359) Judge CHASE, on the subject of the workingman's rights, said:

" An association of individuals may determine that its members shall not work for specified employers of labor. *The question ever is as to its purpose in* reaching such determination. (Italics mine.) If the determination is reached in good faith for the purpose of

bettering the condition of its members and *not through malice or otherwise to injure an employer* (italics mine) the fact that such action may result in incidental injury to the employer does not constitute a justification for issuing an injunction against enforcing such action.

" Workingmen cannot be compelled to work when by so doing their position as workingmen will be injured, simply because if they do not continue their work a manufacturing employer will not be able to sell as large a quantity of material as he otherwise would, and thus his good will, trade, or business may be affected."

In the conceded or proved acts of the defendants herein, as I have found them above, the defendants had not the immediate and primary purpose and object of higher wages, shorter hours, improvement of relations and conditions, or betterment of terms of employment of the teamsters of the plaintiffs. The several general strikes which were actually called, as well as the numerous others which were threatened by the defendants, were for the sole purpose and with the one object of coercing the plaintiffs to unionize their yards. Such purpose and such object were to be attained and accomplished by the infliction of actual, and the threat of further, injury and harm upon the plaintiffs, whose customers, in effect, were to be induced to leave the plaintiffs for persons having union yards and making union deliveries. In law the acts of the defendants were wanton and malicious. They were not done in good faith. High authority has declared such acts to be illegal and restrainable by injunction. (*National Protective Assn. of Steam Fitters & Helpers, Bossert,* and *Auburn Draying Co. Cases, supra.*)

In *Auburn Draying Co.* v. *Wardell* (*supra*) the court restrained the defendants therein from continuing the performance of acts calculated and intended to destroy the good will, trade and business of that plaintiff, which purpose in part had been accomplished, and which acts were done in furtherance of a conspiracy from which the plaintiff was suffering irreparable damages. The defendants therein — also a teamsters' union — notified that plaintiff in effect that it must cause its teamsters to be unionized, or, in the alternative, that the plaintiff would be placed on the so-called " unfair " list. Such plaintiff did not comply with the demand. Thereupon drastic action was taken by the defendants in that case, as a result of which various customers of the plaintiff, because of notices, warnings and declarations of the defendants therein, discontinued the employment of the plaintiff to do their carting — this because of such customers' fear of loss of their own business and of labor troubles which were threatened as against them by the combination of those who were defendants in that case. The instant case presents, indeed, milder acts, but acts just as efficient, on the part of the defendants in their

endeavor to coerce the plaintiffs to unionize their yards — which is really the function of the union rather than of plaintiffs; but the primary purpose and object of the defendants here is identical with that which the highest court condemned as illegal, in the case cited, and inferentially in its previous opinions in the *National Protective Assn. of Steam Fitters & Helpers* and *Bossert* cases. The distinction attempted to be drawn between this case and the *Auburn Draying Co.* case is, in my opinion, a distinction without a difference.

Nothing in the judgment about to be directed will be construed as hampering the labor unions involved from in any way pursuing activities which the courts have declared legal.

Judgment is directed, however, restraining the activities of the defendants complained of, as herein found, which are illegal solely because of such primary purpose and object of the defendants.

Judgment is directed in favor of the plaintiffs for the relief demanded in the complaint, as amended, as to the prayer for relief, upon the first trial, together with taxable costs and disbursements. Settle decision and judgment upon notice. Defendants may present their requests to find upon which I will pass. I will retain all papers pending the settlement of the decision and judgment.