AUBURN DRAYING COMPANY, Respondent, *v.* WILLIAM
WARDELL et al., Appellants.

**Labor unions — conspiracy — boycott — injunction — acts of
members of labor unions calculated and intended to destroy
plaintiff's good will, trade and business — when such acts may
be restrained by injunction.**

1. Personal liberty or the right of property embraces the right to
make contracts for the purchase of labor of others and equally the
right to make contracts for the sale of one's own labor and the employ-
ment of one's individual and industrial resources. It is subject,
however, to the condition that its exercise in the particular trans-
action shall not be inconsistent with the public interests or hurtful
to the public order or detrimental to the common good. The right
of the citizen to effectuate his desire or judgment without interference
or compulsion must always be exercised with reasonable regard for the
conflicting rights of others. An invasion of this right, without a cause
or reason which the law deems essential or useful in the existence or
betterment of organized society, is a legal and actionable wrong
which may be compensated or restrained.

2. There is an important and perceptible difference, in the realms
of justice, civil order and law, between the voluntary acts of an indi-
vidual, done in the right of personal freedom, the right to do or to
refrain from doing, and their injurious effects, and the acts of others,
undesired by them, initiated and performed in virtue of the deception,
compulsion or oppression on the part of that individual, and their
injurious effects.

1

3. In an action brought by an employer of labor against members of labor unions to recover damages and for a permanent injunction, the trial court made findings which are supported by evidence to the effect that the defendants sought the destruction of plaintiff's business and that their acts were calculated to and intended to destroy the plaintiff's good will, trade and business, and, in part, accomplished that purpose, and that such acts were done in furtherance of a conspiracy from which plaintiff was at the time of the commencement of the suit suffering irreparable loss and damage. *Held*, that the means employed were unjustifiable and unlawful and defendants should be restrained from employing them. (*Bossert* v. *Dhuy*, 221 N. Y. 342, distinguished.)

*Auburn Draying Co.* v. *Wardell*, 178 App. Div. 270, affirmed.

(Argued April 17, 1919; decided July 15, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 4, 1917, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action for an injunction, and bringing up for review the interlocutory judgment.

The facts, so far as material, are stated in the opinion.

*Frederick A. Mohr* for appellants. The findings as to motive, or purpose, do not sustain the judgment. (*Davis* v. *Portable Hoisting Engineers*, 28 App. Div. 398; *Davis* v. *Robinson*, 84 N. Y. Supp. 837; *Butterick Pub. Co.* v. *Typo. Union No. 6*, 50 Misc. Rep. 1; *Tallman* v. *Gaillard*, 27 Misc. Rep. 114; *National Protective Assn.* v. *Cummings*, 65 N. Y. Supp. 946; *Mills* v. *U. S. Printing Co.*, 99 App. Div. 605; 199 N. Y. 76; *Wunch* v. *Shankland*, 59 App. Div. 482; *Rosenau* v. *Empire Circuit Co.*, 115 N. Y. Supp. 517; *Tanenbaum* v. *N. Y. Fire Ins. Co.*, 33 Misc. Rep. 134; *National Fireproofing Co.* v. *Mason Builders Assn.*, 169 Fed. Rep. 259; *Matthews* v. *Associated Press*, 136 N. Y. 333.) There is no evidence to sustain the finding that there was injury to or interference with the " property " of the plaintiff. (*People* v. *Davis*, 159 App. Div. 484; *Newton* v. *Erickson*, 70 Misc. Rep. 291; 144 App. Div. 939; *Bossert* v. *Dhuy*, 221 N. Y. 359;

*Parks Son Co.* v. *Druggists Assn.*, 175 N. Y. 1.) There is no evidence to sustain the finding that the evidence establishes the fact that the employers of the defendants who were patrons of the plaintiff discontinued business relations with the plaintiff through the fear of external pressure, emanating from the labor organizations and not from the voluntary action of their employees. (*Thomas* v. *M. M. P. Union*, 121 N. Y. 50; *Boissert* v. *United Brotherhood*, 137 N. Y. Supp. 321.) The evidence does not sustain the finding that the motive or purpose of the defendants' combination was the injury or destruction of plaintiff's business. (*Lambert* v. *People*, 9 Cow. 597.)

*Walter Gordon Merritt, George B. Turner* and *John Taber* for respondent. The defendants are engaged in an unlawful combination to injure the plaintiff's good will, trade and business. (*Bossert* v. *Dhuy*, 221 N. Y. 342; Martin on Modern Law of Labor Unions, 35, § 29; *Loewe* v. *California State Fed. of Labor*, 139 Fed. Rep. 71; *Pickett* v. *Walsh*, 192 Mass. 572; *State* v. *Glidden*, 55 Conn. 47; *Casey* v. *Cincinnati Typographical Union*, 45 Fed. Rep. 135; *National Fire Proofing Co.* v. *Mason Builders*, 169 Fed. Rep. 259; *Curran* v. *Galen*, 152 N. Y. 33; *Aikens* v. *Wisconsin*, 195 U. S. 204; *Hitchman C. & C. Co.* v. *Mitchell*, 245 U. S. 229; *Martell* v. *White*, 185 Mass. 255.) The strikes against the complainant's customers for utilizing the plaintiff as a common carrier are unlawful. (*Pickett* v. *Walsh*, 192 Mass. 572; *Burnham* v. *Dowd*, 104 N. E. Rep. 841; *Thomas* v. *C. R. Co.*, 62 Fed. Rep. 818; *Moore* v. *Bricklayers' Union*, 23 Wkly. L. B. 665; *Kemp* v. *Division No. 241*, 99 N. E. Rep. 389; *Jackson Iron Works* v. *Hurlbut*, 158 N. Y. 34; *Heuman* v. *M. H. Powers Co.*, 162 N. Y. Supp. 590; *Lawson* v. *Connolly*, 45 L. R. A. [N. S.] 1151.)

COLLIN, J. This is a contest between the plaintiff and the labor unions of the city of Auburn, New York. There

is no serious dispute concerning the material facts. In so far as there is a dispute, we have concluded that the findings of the Special Term are supported by the evidence. While there was not unanimity in the decision of the Appellate Division the divergence related to legal conclusions or the applicability of legal principles.

The action was commenced November 29, 1913. The plaintiff, a corporation, was extensively and prosperously engaged in the general trucking business in the city of Auburn, New York. It employed from thirty to forty-five men, the greater number of whom were not members of a labor union. There existed in Auburn, as voluntary unincorporated labor organizations, twenty-two local labor unions, representing the various trades and occupations, with an aggregate membership of about fourteen hundred persons. There existed also the Central Labor Union, an unincorporated association, made up of delegates from the individual unions, and the members of the local unions were members of it and bound by its constitution, rules, regulations and by-laws. It and certain of the local unions are, through representation by officers, defendants in the action. (Code of Civil Procedure, sections 1919-1924.) Expressed objects of the Central Labor Union were to secure united action in defense of the rights and for the protection of the interests of the working classes and to arbitrate and adjust difficulties that might arise between workmen and their employers. Objects of the local unions were increased wages, greater efficiency, employment, and the improvement of working and social conditions through united action.

The defendant Teamsters' Union No. 679 was organized November 9, 1912. The plaintiff neither forbade nor encouraged its employees to join. In July, 1913, representatives of the unions stated to the plaintiff that unless it took the necessary means to get its men to join the union, Teamsters' Union No. 679, it would be placed on the unfair list. The plaintiff refused to so act and Team-

1919.]                Opinion, per COLLIN, J.            [227 N. Y.]

sters' Union No. 679 passed a resolution placing the plain-
tiff on the unfair list, that is, listed it as an employer who
refused to employ and discriminated against union labor
and refused to give its employees the conditions asked for
by labor organizations with respect to hours of labor, shop
conditions and other similar working conditions. Union
No. 679 reported, in accordance with a standing resolution
of the Central Labor Union, the placing of the plaintiff
on the unfair list. The Central Union insisted to the
plaintiff that all its employees must join the union and the
plaintiff replied they were free to join if they so chose.
They refused to join. The Central Labor Union indorsed
the placing of the plaintiff upon the unfair list, thus
making, under its rules, the action final and operative.
The declaration of principles of the Central Labor Union
provided, among other things, as follows: " We shall
withdraw and use our influence to have others withdraw
all patronage from any unfair employer, or any person
patronizing such unfair employer, let his calling be what
it may." The by-laws and regulations of the unions
provided penalties of fines and expulsion for non-con-
formity. The Central Union and other local unions took
the position that they would consider the company unfair
toward organized labor until such time ᴄ their employees
became members of the Teamsters' Union. They with-
drew, and used their influence and positions and their
members used their influence and positions to have
the employers of their members withdraw patronage
from the plaintiff. The findings set forth at length their
acts and their effects. In summary, it may be stated that
dealers, ice deliverers, bakers, butchers, builders, plumb-
ers and contractors, because of the notices, warnings and
declarations of the defendants, in varying and serious
degrees discontinued business with the plaintiff and
refused further to employ it to do carting, hauling or
collection work for fear of loss of business and labor
troubles on account of the defendants' combination

if they continued business with it.    Further findings are:
" 49.  The ultimate hope of the defendants was to better
the condition of the members of the unions by bringing
into said organization all of the craftsmen and laborers in
Auburn, so that their united efforts for higher wages,
shorter hours and better working conditions might be
more persuasive and effectual, and without such motive
or ultimate purpose the boycott would not have been
inaugurated; but the immediate business in hand, the
specific and direct thing wh ch the defendants were then
and there devoting their energies to and focusing all of the
disciplined power of their organization upon, was the
destruction of the plaintiff's busines , in order that the
plaintiff, through its sufferings, might be forced to yield
to the demands of the union.    What was threatened,
intended, and in part accomplished by the defendants
was injury to the business and property of the plaintiff;
the acts performed and results accomplished being also
necessarily injurious to trade and commerce; which
injury to trade and commerce was intended to be brought
about by the defendants through the performance of such
acts.    50.  All of the foregoing acts of the defendants and
those acting in conjunction with them were done in
furtherance of the combination and conspiracy to compel
the plaintiff to employ union men exclusively, and to
discharge any employee who refused to join the union.
*   *   *   52.  The said combination of the defendants
and all acts in furtherance thereof were calculated and
intended to injure and destroy the plaintiff's good will,
trade and business, and all of the defendants were members
of said combination and acting in furtherance thereof.
53.  At the time of the commencement of this suit, plain-
tiff was suffering irreparable loss and damage to its trade,
good will and business from the acts of the defendants in
furtherance of their said combination.    *   *   *   55.  There
has been, during the entire trouble, no force or violence
used or threatened.    There has been no misstatement of

facts, unless the use of the word ' unfair,' when applied to the plaintiff, may have been misleading; and it is not charged that there was any intention to misrepresent the facts in this respect. 56. * * * What was feared by the customers (of plaintiff) was not any voluntary, self-initiated movement of their own employees to quit, but that they would quit because ordered to do so by the organizations to which they belonged, which possessed disciplinary powers to enforce obedience. * * * 58. The said combination of defendants originated solely from the refusal of plaintiff's employees to join the union, the demand made by defendants that plaintiff compel them to join the union, and the refusal of the plaintiff to comply with that demand." As conclusions of law the Special Term found that the combination of the defendants constituted an illegal conspiracy to injure the plaintiff's business and property and their acts were illegal as an intended injury to the plaintiff's business and as unreasonably restrictive of and injurious to trade and commerce and the conspiracy was unlawful as designed to prevent the plaintiff from exercising its lawful trade and calling by threats to do illegal acts; the plaintiff had no adequate remedy at law. The plaintiff was entitled to a decree to recover the damages and a reference to ascertain and report the amount of damages and on the incoming and confirmation of said report to a final judgment against all of the defendants for the amount of said damages thus ascertained, and to a further decree for a permanent injunction against the defendants " to prohibit the enforcement of resolutions, rules or orders of the defendant unions requiring their members to quit the service of employers who patronize the plaintiff, and the giving of notices by or on behalf of said organizations or the officers thereof to such employers, or the public, of an intention to quit provided such employers continued to patronize the plaintiff, and any other attempt or effort to use the powers or authority of the defendant unions

over their own members for the purpose of inducing or compelling patrons of the plaintiff, or the public generally, against their will, to refrain from dealing with the plaintiff." A final judgment was entered for such relief, upon the confirmation of the report of a referee.

The briefs and arguments of counsel are concerned with a wide range of problems and principles relative to the rights of labor unions and of employers and employees. The determinative facts presented in the case at bar are, however, few, and the decisive principles are established. The defendants, in concerted actions and measures, interfered with the property rights and the property of the plaintiff. As a part of its property was the right to be employed by, to do work for, to transact business with and to receive compensation from all those who voluntarily sought or desired to thus engage with it. Personal liberty or the right of property embraces the right to make contracts for the purchase of the labor of others and equally the right to make contracts for the sale of one's own labor and the employment of one's individual and industrial resources. The right is not and cannot be absolute. It is subject to the condition that its exercise in the particular transaction shall not be inconsistent with the public interests or hurtful to the public order or detrimental to the common good. Moreover, it is common and reciprocal to all citizens. An unrestrained and unlimited exercise on the part of some persons would clash with and encounter the exercise of a similar freedom on the part of others. The question then arises whether the interference with the action of the one is justified by the exercise of some right of the interfering other. The right of the citizen to effectuate his desire or judgment without interference or compulsion must always be exercised with reasonable regard for the conflicting rights of others. The law recognizes the right and holds and enforces that an invasion of it, without a cause or reason which the law deems essential or useful in the

existence or betterment of organized society, is a legal
and actionable wrong which may be compensated or
restrained. (*Adair* v. *United States*, 208 U. S. 161;
*Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229;
*Curran* v. *Galen*, 152 N. Y. 33; *National Protective
Association of Steam Fitters* v. *Cumming*, 170 N. Y. 315;
*Matter of Application of Jacobs*, 98 N. Y. 98.)  The action
and measures initiated and sustained by the defendants
worked serious injury to the property of the plaintiff in
consequence of which it sustained substantial damages.
Unless the findings of the Special Term and the facts pre-
sent a legal cause or justification for the interference by
the defendants with the business and property of the
plaintiff the judgment appealed from is right and must
be affirmed.

The interference with and depreciation of the business
and earnings of the plaintiff by the conjoint action of the
defendants was of the nature and effect of a barrier against
access to the plaintiff, its office and place of business.
Their action towards the destruction of its business was
affirmative and aggressive. It was not simply that
the members of Union No. 679, from which the defend-
ants insisted the plaintiff must hire its employees, refused
to be employed by the plaintiff or its patrons, unless and
until it employed members of the union. The unions
and their members sought to induce and induced the
employers of labor in the various trades and industries
and the people generally in that community to discontinue
employing and to abstain from business transactions with
the plaintiff, by directly and affirmatively causing loss
and injury to their business or interests or fear of loss and
injury to their business or interests, in case they did not
so discontinue and abstain. They sought to compel and
did compel those employers and the people to coerce the
plaintiff to unionize its business. They thus attempted
and intended to create a general exclusion and isolation
of the business of the plaintiff, or in other words, its

non-existence so long as the plaintiff refused compliance with their demand that it compel its employees to join Union No. 679. The defendants are intentionally attempting to coerce the plaintiff to unionize its business by aggressively inducing its established and potential customers to ignore its existence in order to be free from the loss and injury which the action of the defendants would otherwise bring to those customers.

The rights, in virtue of which the defendants would justify the interference and the injury, are: (a) That of laborers to associate; (b) to bring within the labor organizations as members all laborers; (c) through the coherent and solidified power and influence flowing from association and united efforts to secure for all laborers higher wages, shorter hours, arbitration of labor disputes and better working conditions. Beyond question those rights exist. Labor unions are and for a long time have been recognized by the courts of this country as a legitimate and useful part of the industrial system. Associations of laborers, to accomplish lawful objects by legal means, have been always recognized and protected by the law of this state. The organizations of the defendants were as lawful as the incorporation of the plaintiff. Their members might and should have promoted their strength, welfare and their intelligent and salutary influence and control. Rights that are lawful and purposes that are useful and just cannot, however, be effectuated and accomplished by unlawful means. The individual cannot injure the property rights of another by the means of causing or controlling through duress, coercion, oppression or fraud, the acts of third persons which produce the injury. The individual may do and does many acts which in their effect are or may be coercive as to another. The right to do those acts inheres in the natural freedom and the civil rights which are his. But there is an important and perceptible distinction, in the realms of justice, civil order and law, between the voluntary acts

of an individual, done in the right of personal freedom, the right to do or to refrain from doing, and their injurious effects, and the acts of others, undesired by them, initiated and performed in virtue of the deception, compulsion or oppression on the part of that individual, and their injurious effects. The individual may lawfully refuse to be employed to drive from his neighbor's field the stray cattle which are destroying the crop and thus, in effect, coerce the neighbor to drive them himself or permit the destruction; but he cannot lawfully prevent, through fraud or other form of dishonesty or compulsion of any nature, another from becoming the employee for such purpose. He may lawfully do that which he cannot lawfully attempt to compel another to do. The one is the exercise of the fundamental right of individual choice and volition; the other is the negation and destruction of the right. In the latter case the individual annihilates as to the others the right which he asserts and maintains for himself, and causes injuries as positively and aggressively as he would did he intentionally disable the other or his industrial resources. The law does not tolerate inequality in the existence and enforcement of rights or the definition and redress of wrongs, and the first condition of individual freedom and opportunity is servitude to law. In the instant case the contest did not arise because the members of Union No. 679, or members of the same occupation and of other unions, chose not to work for the plaintiff or for or with men who did engage in business with it, or sought to persuade, in an orderly and proper manner, persons generally to abstain from business transactions with it. It did not arise in the ordinary and natural exercise by the unions of the right to control their own labor and of the right of association. It arose because the defendants, constituting the entire union population of the city of Auburn, inaugurated and carried on, affirmatively and aggressively, through the agencies of fear and

coercion, a comprehensive exclusion of the plaintiff from the business of the community, in order to compel it to unionize its business.   On the part of the defendants there was organized coercion of the plaintiff into compliance with the demand of the unions that it compel its employees to join Union No. 679, by combining to compel third persons to refrain from having any business relations with it.   The defendants were an organized combination, with a unified intent and purpose, causing irreparable damage to the business and property of the plaintiff. Financial pressure, loss of business, interference with freedom of action were imposed by them in order to force the unionization.   The law should be and is ·that the means were unjustifiable and unlawful and the defendants should be enjoined from using them.   (*Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229; *Burnham* v. *Dowd,* 217 Mass. 351; *Beck* v. *Railway Teamsters' Protective Union,* 118 Mich. 497; *Purvis* v. *United Brotherhood,* 214 Penn. St. 348; *Fink & Son* v. *Butchers' Union No.* 422, 84 N. J. Eq. 638; *Harvey* v. *Chapman,* 226 Mass. 191; *W. A. Snow Iron Works, Inc.,* v. *Chadwick,* 227 Mass. 382; *Martell* v. *White,* 185 Mass. 255; *Cornellier* v. *Haverhill Shoe Manufacturers Assn.,* 221 Mass. 554; *New England Cement Gun Co.* v. *McGivern,* 218 Mass. 198; *Baush Mach. Tool Co.* v. *Hill,* 120 N. E. Rep. 188 [Mass.], July 16, 1918; *Smith* v. *Bowen,* 121 N. E. Rep. 814 [Mass.], February 4, 1919.)

What we have written declares sufficiently the clear and inescapable distinction between the facts and legal principles involved in this case and those involved in *Bossert* v. *Dhuy* (221 N. Y. 342).

The right of the plaintiff to a judgment being affirmed, the form or scope of the judgment rendered is not attacked.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, CUDDEBACK, MCLAUGHLIN and CRANE, JJ., concur; HOGAN, J., not voting.

Judgment affirmed.