Charles Emerson Cook, Plaintiff, against Francis Wilson, Individually and as President of the Actors' Equity Association, et al., Defendants.

(Supreme Court, New York Special Term, August, 1919.)

Injunctions — when will be granted — theatres — contracts — "Actors' Equity Association."

It is a property right of one running a theatre to have the public allowed free, unobstructed access thereto and to have an unrestricted privilege to deal with them and any interference therewith by obstruction or otherwise which leads to the destruction of his business is illegal.

It is unlawful for one by legal means to persuade another to break his contract.

Where the "Actors' Equity Association" or its members counsel or aid or abet for any purpose an individual actor to the end that he may violate his valid subsisting contract with an individual theatrical manager, because there is an alleged moral or any other kind of an obligation higher than his contract, such action is both immoral and illegal.

The actions of actors or their association which have for their object the obstruction of the public in going to theatres peacefully and freely and without molestation are unlawful.

Acts of actors on strike, whether by threat or persuasion, which interfere with the rights of the public and with the right of managers to have the public come, are a violation of law.

Where in several actions brought by various theatrical managers as individuals, to restrain the defendants from conspiring to compel or induce employees of the various plaintiffs to violate valid subsisting contracts still in force and to leave the employ of plaintiffs for the purpose of compelling plaintiffs to recognize the "Actors' Equity Association," the plaintiffs will be granted an injunction as prayed for.

Action for an injunction.

Davies, Auerbach & Cornell (Bainbridge Colby, Charles H. Tuttle, William Klein and Carl E. Peterson, of counsel), for plaintiffs.

Paul N. Turner (Justus Sheffield, M. E. Harby and Martin W. Littleton, of counsel), for defendants.

Hendrick, J. This is one of several actions brought by various individuals against the defendant Wilson and others, to restrain the defendants in these several actions from conspiring together to compel or induce employees of the various plaintiffs to violate subsisting contracts, and to leave the employ of the plaintiffs while such contracts are in force, to the end that the plaintiffs may be compelled to recognize the Actors' Equity Association in their dealings with actors. This is not in any phase an action between the so-called Managers' Association and the defendants. The Managers' Association is not a party to these actions. The actions are brought by individual employers, based on the allegations in the complaint that valid personal contracts exist between the various plaintiffs and the individual actor defendants, which individual contracts, at the time of the beginning of these actions, were in force and had not expired. The plaintiffs are individual managers of their own business, and it is claimed by them that these contracts are valid, existing contracts between a person in the theatrical business (known as a manager) and a player, by which contracts, in general terms, the player has contracted for a specified sum to render his personal service for a stated time, which had not expired at the time of the beginning of these actions. These employers ask an injunction to restrain the defendants whose contracts have not expired by their terms, and to restrain the defendant the Actors' Equity Association from in any

way interfering, by persuasion or threat or intimidation, or by any other means, between the employer and his employee, to the end of inducing or compelling, by intimidation or otherwise, the employee to violate his contract with his employer, to the end that by accomplishing the breaking of individual contracts which are in force, and by doing that generally, in relation to all individual contracts between the individual actor and the individual employer, it may compel another outside organization, not a party to these suits, but composed of the managers and known as the Producing Managers' Association, and also employers of actors generally, to recognize the Actors' Equity Association, and to deal with actors in relation to future and to present contracts only through the Actors' Equity Association. In applying for a temporary injunction the plaintiffs set forth, by affidavit, a great many acts which they claim are illegally participated in by the individual defendants, and also participated in by a third agency, which is not a party to these contracts, namely, the Actors' Equity Association, which acts, they claim, are not only illegal and unjustifiable, but are done for the purpose of compelling the Managers' Association and the managers generally and individually to recognize the Actors' Equity Association, and to compel managers to deal in relation to the employment of actors and actresses through and with the sanction of the Actors' Equity Association. They allege that in pursuance of that plan to compel the recognition of the Actors' Equity Association the Equity Association has induced these individual defendants to violate their present subsisting contracts in pursuance of a scheme to induce or coerce generally actors and actresses into a violation of their contracts, to the end that they may cripple the business of the employers to such an extent that they will be forced,

in order to avoid irreparable damage and loss, to recognize the Actors' Equity Association. We do not need to go into the details of the acts that have been set forth to enlighten the court as to the things that have been done so that the court may reach a conclusion that it is for the purpose above named that these actors have violated their contracts, and that it is for this purpose that the strike now going on is being conducted. In other words, the fundamental fact here is, as it appears to me, that there is an effort on behalf of an organization not a party to these contracts to compel managers to recognize that association. Now, that being the undisputed fact, there is no question of the illegality not only of the acts of these actor defendants, but of the Actors' Association. Before me there are no papers and no allegations of any illegal act on the part of the manager plaintiffs or employers in these cases. There is nothing before me to indicate any illegal act by them which could by any means be construed as a violation of the existing contracts between them and their employees, the actors, who are involved in these separate actions. I have before me simply the proof of legal subsisting contracts which have been breached by the defendant actors. There is nothing to controvert that. No opposing affidavits are filed, and there is nothing before me to controvert the truth of the various affidavits that have been filed in support of this motion. So that as the facts alleged by the plaintiffs are not controverted by the defendants, it comes to me only to declare the law governing these actions, and to provide for the enforcement of the law. This legal situation seems almost to dispose of itself. The law is too well settled to admit of argument. The actions of the actors and of the Actors' Association which have for their object the obstruction of the public in going to the theatres peace-

Supreme Court, August, 1919.          [Vol. 108.

fully and freely and without molestation, are unlawful; the acts of the strikers, as they are called, which interfere with that right and with the right of the managers to have the public come freely to them and to trade with them without obstruction, whether those acts be acts of threat or persuasion, of themselves are a violation of law. The right of a man to do business, the rights founded on private contract between individuals, are property rights. It is a property right for these men who are running theatres to have the public allowed free, unobstructed access to their theatres and an unrestricted privilege to deal with them. That is as much a property right as is the ownership of the theatres themselves; and if there be any interference, by obstruction or otherwise, with that property right which leads to the destruction of the manager's business, such interference is illegal as much as would be the act of a person who took a lighted torch and applied it to the theatre and burned it down. The very recent case of *Auburn Draying Company* v. *Wardell*, 227 N. Y. 1, was one very similar to the case under consideration, and in that the law, which has been so frequently stated by the courts, was reiterated, namely, that interference between the public and the plaintiff is interference with a property right, is illegal, and will be enjoined. I wish to emphasize the clear distinction between the right of an employee to decline to enter into a contract, which he may do for any reason, and the right of employees to conspire together to destroy the business of their employers to the end that they may compel those employers to recognize any outside agency in the transaction of business between them. If an actor breaks his contract with his employer a court of equity will not interfere between the employer and the employee to the end of compelling the employee to

fulfill his contract. The courts will not seek to enforce the performance of a contract for personal services, but will leave the person aggrieved to his remedy at law. The actors may break their contracts, individually or all of them, with or without reason. That is between themselves, their consciences and their employers. The court will not interfere to compel them to fulfill their contracts. The reason is that the law recognizes the fact that it is usually impossible to compel the performance of a contract for personal services. Obviously a court cannot make an actor act, and so if an actor breaks his contract the manager is left to his action for damages or to an equity action to restrain the actor from performing under employment from another during the term of the broken contract. And in those cases, which are recognized by the courts where the services of the actors are of an unusual, unique character, the courts will enjoin such actor who has violated his contract from appearing in other employment. The actors have a perfect right to combine together, to form a union, to join a society such as the Actors' Equity Association, for the purpose of promoting the welfare of the actors generally or individually. They may unite in saying that they will not work for an employer who does not recognize such society. They have a right to make their own conditions for their own employment, and they are at liberty to do so, and if their acts conform with the law in effecting that purpose such organization is perfectly lawful, and not only would not be criticised, but, I think it would be approved generally by the citizens, and certainly by the courts. That applies to contracts and to efforts to obtain contracts in the future. But when valid contracts exist between individuals those contracts are sacred, and to induce a person to violate them for any purpose is an unlawful

act, and that no matter what the means of persuasion be, whether legal or illegal. It is unlawful for one by legal means to persuade another to do an unlawful act, and the violation of a contract is an unlawful act. So that if this Actors' Equity Association, or these actor defendants, counsel or aid or abet, for any purpose, an individual actor to the end that he may violate his existing contract, for the purpose of accomplishing some ulterior object, such action is illegal, no matter what the ulterior purpose be. The end does not justify the means. The general purpose of the Actors' Equity association is to improve the condition of the actors, to get better terms, higher wages and equitable contracts from the managers. This they have every right to do. It is a legal and justifiable and a praiseworthy object, and there are ample means of accomplishing those objects through the agency of the association without resorting to illegal methods. An appeal to an actor on the ground that he should violate his contract with his employer because there is an alleged moral or any other kind of an obligation, higher than his contract, is an immoral and illegal act. An appeal to any employee to violate the law on the ground of a higher moral obligation, either to his fellow actors or to his association, is not only illegal, but it is un-American, opposed to our principles of government, which is founded largely on the sancity of contracts and the right of the individual to contract for himself. An appeal to an employee to violate the law because of an alleged superior moral obligation to any society is illegal. It is anarchy, pure and simple, to assert in practice that the obligation of any member of an organization to that organization is higher than his obligation to obey the law. No fact in these actions is controverted. The defendants submit no affidavits; nothing, in fact, to show me that all the allegations of

the complaint, as fortified by the accompanying affi-
davits, are not true. It is established without contra-
diction that the subsisting contracts are valid indi-
vidual contracts between individuals, and that for the
purpose of forcing the plaintiffs to recognize the
Actors' Equity Association illegal means are being
employed to induce or to coerce actors into a violation
of their contracts. As to future contracts, as I have
said, the actors may do as they please, but subsisting
contracts must not be interfered with for any ulterior
purpose, either by themselves or by any third agency.
This is the rule repeatedly enunciated by the United
States Supreme Court and by the Court of Appeals of
this state. I am announcing no new law, nor am I
applying any new principles in the cases before us.
The Actors' Association and the individual actors
must do no act for the purpose of inducing or which
tends to induce the public not to patronize the play-
houses, which act would tend to destroy such patron-
age and thus destroy the property of the plaintiff.
They must not do any act that has that for its purpose,
to the end that the managers may be forced to recog-
nize the Actors' Association. They may go on and
do all legal acts; may get every actor and actress in the
city to join the association, if they can. They may say
that they will never work for any manager unless such
manager recognizes the Actors' Equity Association;
that they will never make a new contract with such
managers; that they will make such terms and condi-
tions as they like for their future employment, either
as individuals or as a body; but they must not attempt
to obtain the violation or cancellation of subsisting
contracts. It was suggested on the argument, by
counsel for the defendants, that the Managers' Asso-
ciation is an illegal combination, having for its pur-
pose the unjust denial to actors and actresses of their

rights, to the end of forcing contracts upon them, and that this was accomplished by illegal means, by the power and wealth and strength of the managers' organization, which, it is alleged, puts the actors and actresses at the mercy of such association. It is enough to say that no question of that kind is before me for determination. The Managers' Association is not a party to these actions, nor to this motion for an injunction. That issue is not before me, and I do not pass upon it directly or indirectly. Whatever the facts may be in that regard will be determined on the trial of the action, if the question be raised there. But from what appears before me there has been no act on the part of these plaintiffs showing a violation by them of these contracts, and there is nothing to show, nor to suggest, that they have done any illegal act. There remains nothing, therefore, to be done except to allow an order of injunction as prayed for by the plaintiffs herein. I am not condemning the Actors' Equity Association, and I certainly am not condemning any legal steps they may take to effectuate the betterment of the condition of the actors and actresses as against the managers or anyone else. They have a perfect right so to do, and it is a laudable end which is sought to be accomplished. As long as they work to that end in accordance with the laws the court will have nothing but aid to give them. An order will be entered in accordance with the views herein expressed.

Ordered accordingly.