ALBERT FLOERSHEIMER, Doing Business as THE FLOERS-HEIMER COMPANY, Plaintiff, *v.* BENJAMIN SCHLES-INGER, as General President of the International Ladies Garment Workers Union; ISIDOR SCHOEN-HOLTZ, as Treasurer of the Ladies Waistmakers Union, Local No. 25; SIDNEY ROTHENBERG, as President of the Cutters Union, Local No. 10; ISRAEL HORWITZ, Individually and as Manager of the Ladies Dressmakers Union, Local No. 22; MORRIS SIGMAN, Individually and as Manager of the New York Joint Board of the International Ladies Garment Workers Union, Defendants.

(Supreme Court, New York Special Term, March, 1921.)

Injunctions — when injunction pendente lite granted — actions — conspiracy — labor unions — pleading.

Where the complaint of a manufacturer of dresses and a member of the " Dress and Waist Manufacturers Association " clearly sets forth a good cause of action against the principal, general and local officers and certain members of the " International Ladies' Garment Workers Union," a national organization, in charging them with conspiring to cause plaintiff's factory to shut down and that they are wrongfully instigating the employees to quit work, the plaintiff upon all the facts alleged will be granted an injunction *pendente lite* as it appears that the complaint sets out a cause of action against all of the members of the union.

MOTION for an injunction *pendente lite.*

Gordon, Tally & Gordon, for plaintiff.

Morris Rothenberg (Leonard M. Wallstein and Ralph M. Frink, of counsel), for defendants.

NEWBURGER, J.  Plaintiff is a manufacturer of dresses and a member of the Dress and Waist Manu-

facturers Association. He employs about one hundred people, men and women. They consist of operators, finishers, cleaners, examiners, drapers, cutters, pressers and general utility helpers. The individual defendants are the principal, general and local officers and certain members of the defendant International Ladies' Garment Workers Union, a national organization. In January, 1913, a protocol of peace, being an agreement between the organized employers in the dress and waist industry and the defendant International Union was adopted, although a strike occurred in January, 1919, which lasted eleven weeks and which was settled by agreement between the parties on December 31, 1920; and as stated in the brief of the defendants, that when the agreement expired and no arrangement for its renewal and extension could be reached, the employees, members of the defendant union, went on strike for the purpose of prevailing on their employers to renew the agreement for collective bargaining between the employers' association and the employees' union. The plaintiff, in view of that situation, elected to conduct his business with his employees and upon the express agreement with them that during the continuance of their employment they should at all times refrain from joining or becoming members in any way or affiliated with the defendant International Ladies' Garment Workers Union or in any other union, and that written agreements with such employees were made. It is charged that the defendants have entered into a conspiracy and are conducting a strike against plaintiff's business, and causing pickets to congregate about plaintiff's factory and threatening them with physical violence and intimidating such workers, and inflicting violence upon them in visiting their homes and attempting to persuade the workers to join the defendant union, and

threatening such workers with bodily harm if they fail to join such union; and that the defendants are attempting to carry out their plans and purposes by the use of threats, intimidation, violence and direct action. Attached to the moving papers are a number of affidavits of employees of the plaintiff showing that threats have been made by some of the defendants against them, and in a number of cases such employees were assaulted. Attached to the complaint is a copy of agreement signed by a large number of plaintiff's employees agreeing not to belong to the union. The affidavits interposed by the defendants admit that a strike has been called and, as stated therein, is to prevent the reduction of proper standards of wages, hours and sanitation in the factories, as well as to maintain such standards where they now prevail, by continuing the system of collective bargaining between the employers and the employees, and that a strike at the factory of the plaintiff is a part of the general strike. It is clear from the affidavits submitted that the strike is not for the purpose of bettering the condition of the employees, but prompted rather by fear that it might interfere with the system now in vogue of collective bargaining. This case comes clearly within the ruling of *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229. In that case Mr. Justice Pitney said: " Plaintiff, having in the exercise of its undoubted rights established a working agreement between it and its employees, with the free assent of the latter, is entitled to be protected in the enjoyment of the resulting status, as in any other legal right. * * * Defendants set up, by way of justification or excuse, the right of workingmen to form unions, and to enlarge their membership by inviting other workingmen to join. The right is freely conceded, provided the objects of the union be proper and legitimate, which we

assume to be true, in a general sense, with respect to the Union here in question. *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 439. The cardinal error of defendant's position lies in the assumption that the right is so absolute that it may be exercised under any circumstances and without any qualification; whereas in truth, like other rights that exist in civilized society, it must always be exercised with reasonable regard for the conflicting rights of others." In *Curran* v. *Galen*, 152 N. Y. 36, the court by a *per curiam* decision says: "It is proper and praiseworthy, and, perhaps, falls within that general view of human society, which perceives an underlying law that men should unite to achieve that which each by himself cannot achieve; or can achieve less readily. But the social principle which justifies such organizations is departed from, when they are so extended in their operation as either to intend, or to accomplish, injury to others. Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper, or to restrict, that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization and to come under its rules and conditions, under the penalty of the loss of their position, and of deprivation of employment, then that purpose seems clearly unlawful and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges. It would tend to deprive the public of the services of men in lawful employments and capacities. It would, to use the language of Mr. Justice Barrett in *People ex rel. Gill* v. *Smith* (5 N. Y. Cr. Rep., at

p. 513), ' impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages or the maintenance of the rate.' " See, also, *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *Posner Co.* v. *Jackson,* 223 id. 325; *Jaeckel* v. *Kaufman,* N. Y. L. J., Oct. 13, 1920; *Piermont* v. *Schlesinger,* id. Dec. 2, 1920; *Finnegan* v. *Butler,* 112 Misc. Rep. 281; *Michaels* v. *Hillman,* 111 id. 284. The amended complaint sets forth a good cause of action. The objection thereto made by defendants that it omitted to allege, first, that the defendant union had notice of the employment contracts, is met by the allegation in paragraph 13 " that all of the workers engaged by the plaintiff were and still are employed pursuant to contracts of employment, all of which defendant union had notice of." The second objection, that it omitted to charge all of the defendants with unlawful acts complained of is untenable. See *Rourke* v. *Elk Drug Co.,* 75 App. Div. 145. It is clear from a reading of the amended complaint that it sets out a cause of action against all of the members of the union, in charging them with forming a conspiracy to cause plaintiff's factory to shut down and are wrongfully instigating his employees to quit work. The objections to the sufficiency of the amended complaint must be overruled. Upon all the facts and authorities cited the motion for an injunction *pendente lite* will be granted.

Motion granted.