Schwartz & Jaffee, Inc., Plaintiff, *v.* Sidney Hillman, Individually and as General President of the Amalgamated Clothing Workers of America, an Unincorporated Association, and Others, Defendants.

(Supreme Court, Kings Special Term, March, 1921.)

Injunctions — pendente lite — strikes — when motion for injunction granted — labor unions — associations — contracts.

Where in an action brought by a manufacturer of clothing to perpetually and permanently enjoin the principal, general and local officers and certain members of the "Amalgamated Clothing Workers of America," a national organization having local unions under its jurisdiction, from doing acts injurious to plaintiff's business and for an adjudication that said association is a conspiracy in restraint of trade, it appears from the papers on a motion for an injunction *pendente lite* that, since the defendant union had called a strike, plaintiff had determined and done everything in its power to return to an " open shop " policy, and there is ample proof of plaintiff's claim that defendants are guilty of calling the strike, picketing the plaintiff's premises, interfering with employees and workers of plaintiff and with their contracts of employment, and in general of unlawfully instigating, advising and directing acts of various kinds against plaintiff and its business, the motion for the injunction will be granted.

Application for an injunction.

Meier Steinbrink, for plaintiff.

Lowenthal & Szold (Robert Szold, of counsel), for defendants, Hillman and others.

Van Siclen, J. The plaintiff corporation, a manufacturer of clothing, makes application to this court for an order enjoining the defendants during the pendency of this action from doing acts injurious

Supreme Court, March, 1921.          [Vol. 115.

to the plaintiff's business which, it is alleged, consist of unlawful picketing, threats, molestation, intimidation, interference with contracts of employment, and instigating, waging and continuing a strike among plaintiff's employees. The defendants oppose the motion in every particular. The relief sought by the plaintiff is to perpetually and permanently enjoin the defendants from doing the acts sought to be restrained, and for an adjudication that the defendant Amalgamated Clothing Workers of America is a conspiracy in restraint of trade and against the rights of non-union workmen, and for personal judgment.

It appears from the moving papers that in December, 1920, the defendant union called a strike against the plaintiff and that since that time the plaintiff has not recognized the defendant union, but on the other hand has determined and done everything in its power to return to what the plaintiff claims to be the " open shop " policy and entered into individual contracts with all of its employees whereby said employee agreed to become, or remain during the period of employment, non-union. Thereafter, it appears the defendants' pickets and others, at the direction of the defendant union, resorted to extreme violence upon those in the employ of plaintiff and that it is to secure relief from such condition that this application is made.

The plaintiff's contention is that those named as defendants herein are the principal, general and local officers and certain members of the Amalgamated Clothing Workers of America, a national organization having local unions under its jurisdiction and that the acts complained of have been done, directed, instigated, or authorized and approved by the defendant, and that all of the individuals committing said acts of violence are either members of the defendant

union, employed by it, or swayed and directed by the leaders and those in charge of the activities of the defendant union. It is claimed that the defendant union is not a branch of the American Federation of Labor, but a secession movement from the United Garment Workers of America, which organization from 1914 to 1919 was recognized generally by the clothing manufacturers and that said manufacturers had contracts and agreements with said union which were, to all intents and purposes, exclusively non-union; that from August, 1919, to August, 1920, the Clothing Manufacturers Association of New York, of which the plaintiff is a member, had a so-called collective agreement with the defendant union herein and that after said August 26, 1920, said agreement was not renewed, with the resultant almost daily strikes and troubles of various kinds which continued until December, 1920, when all relations between the two were severed, and immediately thereafter the defendant union called on a strike all of plaintiff's employees. Since that time, plaintiff claims that its factory in the borough of Brooklyn and place of business in the borough of Manhattan have been picketed, most of the pickets being plaintiff's former employees; that these pickets intimidated, threatened and insulted plaintiff's employees as they came to and left their place of employment and in addition thereto, the employees and workers of the plaintiff were assaulted and such serious injuries inflicted on some that it was necessary to resort to the courts and to the grand jury. Plaintiff contends that the activities of the defendant union have continued and it is attempting by force and violence and threats and persuasion to entice the plaintiff's employees away and to break their contracts with the plaintiff and to join the defendant union; that in order to succeed, the

Supreme Court, March, 1921.          [Vol. 115.

defendant has voted a large sum of money for that purpose, has held public meetings at which defendant's officers or leaders have counselled and advised the members to acts of violence and to do the very acts complained of by the plaintiff and which it claims threatens to wholly destroy its business. By affidavit and otherwise, the plaintiff sets forth fully specific acts of violence practiced on plaintiff and its employees by the defendant union members, pickets or those advised, swayed or controlled by them, against which plaintiff claims it can obtain no relief other than by injunction.

The defendant union seeks to meet the charges and allegations of the plaintiff and its complaint by disclaiming that the defendants are responsible for any of the acts complained of, even though some of the members of the defendant union or its local may have participated or been implicated in the unlawful acts charged. However, it appears from all the papers, sufficient for the purpose of this motion, that the real control of the entire situation is with the defendant union, its officers and directors and those who advise, direct and control the course and conduct of the union and its members. Manifestly no other result could reasonably be expected to follow, when the speeches at the meetings, the advice and counsel of the officers and leaders of the defendant union and the very purpose and character of the existence of the defendant union and its activities in the strike called against the plaintiff are considered. From the foregoing, the defendant union will not be heard to deny that it called said strike and to now assert that instead of the defendant being in a conspiracy with the former employees of the plaintiff to ruin the plaintiff's business, the plaintiff and other manufacturers allied with it are seeking to destroy the defendant union.

Further, the defendant union claims that the former employees of the plaintiff want to go back to work, but fails to state the conditions to be insisted upon. Plaintiff has offered to take the former employees back to work and stated its conditions, which the defendant union, of course, will not accept.

The defendant admits that there is picketing of plaintiff's places of business, but declares that it is by the individual employees after the " lockout " in December, 1920, without any instigation or direction of the defendant union; that the defendant union has nothing to do with the pickets and that, therefore, the injunction sought against picketing must be denied. In the brief presented on behalf of the defendants, the defendants, in spite of the fact that they deny any responsibility for the picketing alleged, in the strongest terms assert that picketing is lawful, that it has a highly useful purpose, and uphold the manner and method of picketing complained of in this very action. The defendant also disputes any merit to the plaintiff's claim that relief should be afforded the plaintiff as to its contracts of employment. The defendant, however, does not in any wise question the contracts which it imposed upon the employers from 1914 to 1919, but claims that defendant should not be restrained because it is not shown that the defendant's acts are wilful or malicious and that the plaintiff and other manufacturers cannot, by forcing upon the workers such a contract, practically paralyze the activities of the defendant union, its members, and workers generally. In any event, the defendants say that the pickets did nothing to induce a breach of said contracts. As to the assaults and other acts of violence, the defendants' answer is that the defendant Hillman and the other individual defendants above amed are not shown to be in any way connected with

the same and that the guilty individuals should be prosecuted. Finally, the defendant's contention is that the relief sought by the plaintiff should be denied because it comes into court with unclean hands. If the papers presented show that the plaintiff is unclean and that it has entered into a conspiracy to destroy the defendant union and to oppress its members and prevent workers generally from obtaining a living, the plaintiff should be turned out of court even though it appears that both the plaintiff and the defendants are of equal guilt. All the papers submitted must be carefully considered upon the point and the prior character of the acts and conduct of both parties should be reviewed. It seems from all the papers submitted upon this motion that both the plaintiff and the defendants herein named have been fully advised for a long time prior to the commencement of this action as to the course of conduct of each, and every turn of the affairs and activities of all concerned, so that no one should now be heard to deny the responsibility and liability therefor.

The issue between the parties is nothing more than the old conflict between capital and labor. The swing of the pendulum is influenced almost entirely by the law of supply and demand, and neither capital nor labor at any time is satisfied to be governed by the length or sweep to and fro. Prior to December, 1920, when the trouble between the parties hereto became acute, and from 1914 to the last mentioned date, the swing was entirely to the side of labor, enabling it to force upon capital, demands and contracts of employment exclusive as to non-union or unorganized workers, and, therefore, oppressive. Now, and perhaps for a few years to come, the pendulum swing will be to the side of capital, which in turn will force upon labor, contracts equally oppressive and exclu-

sive as to union or organized workers. It will be seen that at no time is there what may be termed, the true "open shop." The authorities seem to uphold both forms of contract and commend them except, perhaps, when it can be determined or proven that the same are oppressive, or a result of conspiracy, or in restraint of trade. A peculiar slant to the whole situation is that the worker of to-day may become the master of to-morrow; from the radical to the conservative by mere change of circumstances and position. Nevertheless, there will be no change in their relationship. When capital has the upper hand it will continue to grind down labor and when labor is in the ascendant it will in turn continue to harass, cheat, and seek to either control or destroy capital. Neither at any time is willing to give the *quid pro quo,* and the never ceasing conflict goes on.

There can be no real solution of the problem, as old as our civilization, unless the foundation therefor is established by law. Labor, labor unions, or organized labor have their place and use; capital and organization thereof, likewise. But both must be made to know and to keep their respective proper places and use by law, to change only by the ever fluctuating force of supply and demand. Such a medium would prevent both extreme conservatism or autocracy, and extreme radicalism or sovietism.

Can the courts step in between capital and labor to strike the medium and balance the scales? There must be in the conflict justice somewhere, somehow, at all times. The courts cannot find the balancing point by boxing the compass of judicial opinion from extreme radicalism to ultra-conservatism. They must stand at all times as the representatives of capital, of captains of industry, devoted to the principle of individual initiative, protect property and persons

from violence and destruction, strongly opposed to all schemes for the nationalization of industry, and yet save labor from oppression, and conciliatory toward the removal of the workers' just grievances. The prosperity of the nation depends on constructive legislation, backed up by intelligent judicial interpretation and strict enforcement.

As to the law applicable to the facts set forth in the papers submitted, this court has fully expressed its opinion in these so-called labor cases. See *Reardon, Inc., v. Caton,* 107 Misc. Rep. 541. Compare *Reardon v. Caton,* 189 App. Div. 501; *Reardon v. International Mercantile Marine,* Id. 515, with *Auburn Draying Co. v. Waddell,* 227 N. Y. 1. It will serve no good purpose to rehash what has been declared by the appellate courts to be the respective rights and duties of the employer and the worker. The case of *Curran v. Galen,* 152 N. Y. 33, well expresses the same. The individual motto is, " work if you please; strike if you will." On the other hand, an employer of labor has the right to determine for himself how and under what conditions he will conduct his business. And so, as hereinbefore stated, the courts have recognized contracts imposed by the workers on their employers, exclusive in their nature, and the contracts of the employers imposed on the workers, equally exclusive in their nature, up to the point or extent, when and where, such become oppressive or a conspiracy and therefore unlawful.

The case of *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229, is illuminative upon the question of respective rights of employer and employee where the facts presented are in substance similar to those here and wherein the court found that the plaintiff was entitled to the injunctive relief sought.

So far as the question of picketing is concerned,

defendant does not deny that violence has followed as the result of the strike or lockout and that there has been picketing. The dispute is as to the sort and extent of the so-called picketing. In cases of this kind " peaceful picketing " or " mental picketing " or what-not are usually only figures of speech or exist in the imagination,—mostly mentioned, seldom met with. That there ever in reality existed, or was practiced " peaceful picketing," is a question. In the present case there was no need of picketing to inform any one that there was a strike or a lockout at the plaintiff's premises, Every one knew it. The purpose of the picketing was just as well known, and " peaceful picketing " was not in fashion or even sought to be practiced and could serve no useful purpose under the circumstances. As shown by the affidavits attached to the moving papers, the picketing as practiced herein was wholly unlawful and should be suppressed. Upon a careful consideration of all the papers and memoranda submitted, the court finds ample proof of plaintiff's claim that the defendants are guilty of the acts complained of as to calling of the strike, picketing the plaintiff's premises, interference with employees and workers of the plaintiff and with their contracts of employment, and in generally unlawfully instigating, advising and directing acts of various kinds against plaintiff and its business, from which relief should be granted by way of injunction.

Motion granted.