MLLE. REIF, INC., Plaintiff, *v.* CARL RANDAU and Others, Defendants.

Supreme Court, Special Term, Kings County, December 3, 1937.

*A. E. Robert Friedman,* for the plaintiff.

*Joseph Goodwin,* for the defendants.

STEINBRINK, J.   Motion by plaintiff for an injunction restraining defendants from picketing and other acts and conduct incidental thereto in a dispute in which the plaintiff is neutral.   The defendants' officers and members of Local No. 3 of the Newspaper Guild of New York are " on strike " against the *Brooklyn Daily Eagle.* This strike has been in progress since September 13, 1937.   The

plaintiff conducts the business of a beauty parlor, with its main store at No. 721 Flatbush avenue, Brooklyn, and a branch store in Manhattan. She has been engaged in this business for a great many years and in it has apparently built up a considerable patronage and good will. The sin with which she is charged by the defendants is that she advertises in the *Brooklyn Daily Eagle.* She has been such an advertiser for about ten years. She has neither part nor parcel in the grievances between the defendants and the *Brooklyn Daily Eagle.* None of her employees are on strike. To begin with, the defendants assert that the plaintiff is entitled to no relief, since non-compliance with section 876-a of the Civil Practice Act is claimed. With more than formal respect for my brother, Mr. Justice FABER, I cannot subscribe to the holding that this is a labor dispute within the meaning of section 876-a of the Civil Practice Act. (*Davega-City Radio, Inc.,* v. *Randau,* 166 Misc. 246.) No relationship of employer or employee is here claimed, nor do the recently-enacted provisions of section 876-a of the Civil Practice Act make lawful any acts which were unlawful when the statute was passed. (*American Gas Stations, Inc.,* v. *Doe,* 250 App. Div. 227; *Remington Rand, Inc.,* v. *Crofoot,* 248 id. 356, 360.)

It may fairly be found from the moving papers and the affidavits that here has been something more than either lawful picketing or advertisement of the fact that the defendants are on strike against the *Brooklyn Daily Eagle.* If confirmation of the allegations in the complaint and moving papers is needed, it may be found in the *Guild Reporter,* the official publication of the American Newspaper Guild, issue of November 1, 1937 (submitted as an exhibit), where, at page 5, the activities of a Guild striker are detailed at some length. The defendants have the right to publicize in every lawful manner the fact that they are on strike against the *Brooklyn Daily Eagle,* but in thus publicizing this fact they may not use the names of those who are advertisers in the *Eagle.* The plaintiff sells no goods or products made by the *Eagle.* Rather, it seeks through the medium of the advertising columns to attract to itself patrons.

In connection with the picketing, there has been shouting, the use of the word " scab " as applied to the plaintiff's establishment, and the appeal to the public not to have any work done at or to patronize the plaintiff's shop. On at least one occasion a so-called picket masqueraded, the plaintiff says as a gorilla, the defendant admits as a monkey, paraded in front of the plaintiff's establishment, and it is charged that this gorilla, going through the antics of his ancestors, carried a sign, " I was once a beautiful woman," while a fellow picket shouted, " Don't patronize Mlle. Reif. This is what happens if you patronize this place." This and similar perform-

ances naturally attracted crowds of persons. This latter act is rather weakly excused in the answering affidavit with the assertion that its " sole purpose was to call the public's attention to the placards carried by the picket," and recognizing that here at least there was transgression, the affidavit continues, " this act was never repeated."

The Civil Practice Act provides that in Kings county all foreclosure suits must be advertised in two daily newspapers published within the county. There are only two such daily newspapers in Kings county, one of which is the *Brooklyn Daily Eagle*. Will it be asserted that because the justices of this court designate the *Brooklyn Daily Eagle* for such advertising that either the homes of the justices or the courthouse itself may be picketed with such signs and accompanied by such acts as are detailed in the moving papers? The very persistence with which defendants' representatives pressed the plaintiff are coercive in effect and are of sufficient robustness to constitute illegal conduct. The defendants' activities are unquestionably intended and calculated to intimidate and coerce the plaintiff.

" The right to carry on business — be it called liberty or property — has value. To interfere with this right without just cause is unlawful." (*Dorchy* v. *Kansas*, 272 U. S. 306, 311, opinion by BRANDEIS, J.) And the rule is not different where behind the facts presented to the court lies a labor dispute. Freedom to conduct a business, freedom to engage in labor, each is like a property right. Threatened and unjustified interference with either will be prevented. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 265.) It has been universally accepted for many years, and recent amendments have not changed this, that " the individual cannot injure the property rights of another by the means of causing or controlling through duress, coercion, oppression or fraud, the acts of third persons which produce the injury." (*Auburn Draying Co.* v. *Wardell*, 227 N. Y. 1, 10.) It is difficult to canalize or classify in these so-called labor cases conduct which is lawful and which is unlawful. There may be isolated acts which cannot be interpreted as unlawful or wrong, but the cumulative effect of many of such acts may together create a situation which passes the bound of patience and tolerance and creates a hugger-mugger situation, the only object of which can be to compel the one upon whom pressure is exerted to " bend the pregnant hinges of his knee that thrift may follow fawning."

The very case cited by defendants and on which so much reliance is placed, it seems to this court, is authority for what the plaintiff here contends for. For in *Spanier Window Cleaning Co.* v. *Awerkin*

(225 App. Div. 735) the Appellate Division, while modifying a sweeping and broad injunction granted at Special Term, nevertheless prohibited the defendants in connection with their picketing from displaying on their placards the name of any of the plaintiff's customers or from referring directly or indirectly to the buildings of plaintiff's customers or the carrying of any placard or sign with such a reference, direct or indirect. In the case last cited, the plaintiff had contracts for window cleaning with various large office buildings in the borough of Manhattan and the defendants picketed those buildings and on their signs used the names of plaintiff's customers. In the endeavor to equalize the age-old struggle between capital and labor, Legislatures have enacted statutes and courts have interpreted them so as to recognize what has frequently been referred to as peaceful picketing as the lawful advertising by labor of its grievances, as lawful appeals to those selling non-union made goods to discontinue so doing. These acts are not unlawful, but where there is attempt to interfere or ruin the business of one who is not concerned in the dispute between labor and its employer the boundary of lawful conduct is transgressed and the secondary boycott is called into being.

Oakes, in his book on Organized Labor and Industrial Conflicts, discusses the limits of permissible conduct in influencing the action of third persons by stating the rule to be: " It must not, however, so exceed the bounds of persuasion as to become minatory. While individuals may lawfully refuse to have dealings with another and may agree with one another that they will act simultaneously in so doing, such refusal must be the result of an unhampered volition and not of a constraint put upon such volition." So long as defendants confine themselves to honest persuasion the plaintiff has no right to complain, but the papers on this motion show that defendants not only misrepresented the situation but they attempted by intimidation to injure or destroy the plaintiff's business. This they have no right to do. (*J. H. & S. Theatres, Inc.,* v. *Fay,* 260 N. Y. 315, 319; *Wise Shoe Co.* v. *Lowenthal,* 266 id. 264, 268.)

The injunction will be granted, but will be limited in its scope as was the modified injunction in *Spanier Window Cleaning Co., Inc.,* v. *Awerkin (supra).*