## ÆOLIAN CO. et al. v. FISCHER et al.

District Court, S. D. New York. May 15, 1928.

**I. Monopolies ☞24(I)—As affects injunctive relief, refusal to work on buildings, for purpose of coercing employment of union men in installing organs, held not interference with interstate commerce (15 USCA § I et seq.).**

Refusal of union workers in building crafts to work on same building with nonunion men installing organs, for purpose of coercing employment of union men by organ company manufacturing, installing, and maintaining organs, *held* not subject to interference by injunction under Sherman Act, as amended by the Clayton Act (15 USCA § 1 et seq.), because not involving interference with interstate commerce.

**2. Injunction ☞101(I)—Secondary boycott is legal, unless maliciously intended to destroy another's business and good will.**

Secondary boycott is not illegal per se, and is condemned only when inspired by malicious intent and purpose to destroy the good will or business of those against whom it is directed.

**3. Injunction ☞101(I)—Legality of refusal of members of affiliated unions to work with nonunion men depends on motive and justification.**

Legality of refusal of members of affiliated unions to work on premises with nonunion men depends on whether motive is to protect their own interests or to injure the employer of the nonunion men; self-interest being justifiable motive.

**4. Injunction ☞101(I)—Refusal of union members to work on premises with nonunion men is not of itself illegal.**

Workingmen may organize for purposes deemed beneficial to themselves, and their refusal to work on premises where nonunion men are employed is not illegal per se.

**5. Injunction ☞136(2)—Refusal of members of affiliated unions to work in building in which organs were being installed by plaintiffs' nonunion employees held not to warrant preliminary injunction, where improper motive was not shown.**

Refusal of members of affiliated unions to work in building in which nonunion men were employed in installing organs *held* not to warrant preliminary injunction, since law permits members of union to refuse to work on premises with nonunion men, where purpose is to protect their own interests, as distinguished from malicious purpose to injure another.

In Equity. Suit by the Æolian Company and others against Jacob Fischer, individual-

ly and as president of Piano, Organ, and Musical Instruments Workers' International Union of America, and others. On plaintiffs' motion for preliminary injunction. Motion denied.

Motion for preliminary injunction upon complaint and supporting affidavits. The case presented by the complaint and supporting affidavits may be summarized as follows:

The plaintiff corporations, organized respectively under the laws of the states of Connecticut, Ohio, Maryland, Vermont, Massachusuetts, and Maine, are engaged in the manufacture, installation and maintenance of pipe organs and other musical instruments. They have been for some time, and now are, engaged in contracting and in performing contracts for the installation and maintenance of pipe organs in the city of New York. All of these organs, with the exception of those manufactured and installed by the Wurlitzer Company, are transported by the plaintiffs from factories in other states. In the conduct of their business the plaintiffs have at all times employed open shop methods; that is to say, they make no discrimination in the employment of labor between union and nonunion men, and their employees are free to join any union they wish.

The defendants are voluntary unincorporated labor unions, their officers and agents. Two corporations and their officers are also made defendants, because of their having joined in the conspiracy alleged. All of the defendants are alleged to be citizens of the state of New York. All of the building trades, excepting the iron and steel workers, are completely unionized in the city of Greater New York, and are represented in the defendant New York Building Trades Council of Greater New York and Long Island through membership of their respective delegates in said council.

The defendant Piano, Organ, and Musical Instruments Workers' International Union of America is composed of persons engaged in the installation and maintenance of pipe organs, and is made up of different local unions throughout the United States. The local union claiming jurisdiction within the territory of New York City, Long Island, and New Jersey is the defendant Organ Workers' Local No. 9, and the business agent of this local is the defendant Frederick W. Meller. Since prior to the year 1925 this local union has attempted to unionize the plaintiffs' employees engaged in the installation and maintenance of pipe organs, and has combined and conspired for this purpose

with the unions controlling all branches of the building industry within the metropolitan district of New York, including the defendants Local No. 3 International Brotherhood of Electrical Workers, Riggers' Union Local No. 170, International Association of Bridge and Structural Ironworkers, and Local No. 28 International Association of Sheet Metal Workers, hoping to compel the plaintiffs and others engaged in the same industry to employ exclusively union labor in their work of installing and maintaining pipe organs in the city of New York, and to this end has threatened that, if any concern should employ nonunion labor in such work, it would be prevented by the action of the New York Building Trades Council, and the unions associated and affiliated with it, from completing contracts, by the refusal of the members of the affiliated trades to work upon buildings when such contracts were being performed.

In October, 1925, defendant Organ Workers' Local No. 9 caused to be circulated among the plaintiffs and all other manufacturers of organs within its jurisdiction a proposed contract to be submitted to their employees, providing for the regulation of hours of labor and working conditions of all employees engaged in the installation and maintenance of pipe organs in said territory. The plaintiffs refused to accede to the terms of this proposed agreement, with the result that in December, 1925, a strike was called by defendant Organ Workers' Local No. 9, and the members of this union in the plaintiff's employ quit work for a period of approximately 14 weeks. At the end of this period the striking employees returned voluntarily to their work, since which time there has been no dispute between the plaintiffs and their employees regarding the terms or working conditions of their employment.

Notwithstanding the failure of this strike, defendant Organ Workers' Local No. 9, through its delegate, the defendant Frederick W. Meller, has caused the members of various building trades unions engaged in building operations, where employees of the plaintiffs were engaged in the installation or maintenance of pipe organs, to join in building trades strikes, and, by causing or threatening such strikes, has coerced and intimidated the general contractors, architects, or owners of said theaters or other buildings to cancel their contracts with the plaintiffs, or to delay the work of the plaintiffs, by causing the plaintiffs to work at night or at other times, when the building trades were not engaged in work upon the building, or to delay their work until the building had been completed.

Similar coercion has been brought to bear through the defendant Combined Amusement Crafts, which is a labor organization composed of the various trades engaged in the operation of theaters, and the defendant Meller, through the affiliation of his union therewith, has made threats to cause the shutting down of theaters by sympathetic strikes of the theatrical workers in places where the plaintiff's nonunion workmen were engaged in repairing or tuning an organ. Instances have occurred where theater owners have compelled organ manufacturers, including some of the plaintiffs, to either cancel their contracts for maintenance or repair of organs in theaters or to delay performance of the same on account of sympathetic strikes of theater workers, threatened or procured by defendant Meller, through the affiliation of his union with said Combined Amusement Crafts.

Defendant Organ Workers' Local No. 9 has also from time to time caused the other defendant unions to withhold their aid to plaintiff's employees in buildings where organs were being installed. For instance, members of the defendant Local No. 3 International Brotherhood of Electrical Workers, at the instigation of Organ Workers' Local No. 9, have refused electric light which was necessary for the work of installing and maintaining organs. Members of Riggers' Union Local No. 170 International Association of Bridge and Structural Ironworkers have refused to hoist organ parts and materials for the purpose of installation, and members of defendant Local No. 28 International Association of Sheet Metal Workers have annoyed and harassed plaintiff's employees by claiming the right to do the sheet metal work, not only outside the organ, but within the organ itself. And these defendant unions have from time to time engaged in strikes which have caused plaintiffs' contracts either to be canceled or seriously delayed or hampered in their performance.

The defendant Organ Workers' Local No. 9 did not become a member of the New York Building Trades Council until January of this year. Prior to that time various building trades unions affiliated with said Building Trades Council had been engaged in strikes on buildings where the plaintiffs or other organ manufacturers were installing or maintaining organs, and the Building Trades Council was fully aware of the efforts of the defendant Meller and the defendant Organ Workers' Local No. 9 to unionize the work of installing and maintaining organs in the metropolitan district. The purpose of the Building Trades Council in admitting defendant Meller and his unions to its membership was to aid them in unionizing the organ workers in New York City. In March, 1928, while the plaintiff, the Æolian Company, was engaged in the performance of an agreement with the defendant Lodge No. 22 of Benevolent and Protective Order of Elks for the erection of a pipe organ in the building of said defendant in Brooklyn, which was then in process of construction, defendant Frederick W. Meller, individually and as business agent of Organ Workers' Local No. 9, through his membership in the New York Building Trades Council, caused a strike to be called by said council of the building trades employed on said building. As a result of said strike, or threats thereof, the defendant Mark C. Treddenick Company, Inc., which was the general contractor engaged in constructing the building, and the defendant Lodge No. 22 of Benevolent and Protective Order of Elks, the owner of the building, thereupon notified the plaintiff, the Æolian Company, that its men would no longer be allowed to proceed with their work, and would have to be taken off the job at once, and on the following day the employees of the plaintiff, the Æolian Company, were refused admittance to the organ chamber, and said plaintiff was notified by the owner of the building that it would not be allowed to proceed with its contract until all of the other trades had completed their work on the building, which would be a period of about eight weeks. The contract of the plaintiff, the Æolian Company, in this instance provided that the organ was to be erected as soon as the building was ready for its installation.

Jurisdiction is claimed upon the ground of diversity of citizenship, and upon the ground that the defendants are engaged in a combination and conspiracy in restraint of interstate commerce.

Pavey & Higgins, of New York City (J. C. Higgins, of New York City, of counsel), for plaintiffs.

Morris Hillquit, of New York City, for defendants Fischer, Rosebrook and Meller.

James E. Smith, of New York City, for defendant Local Union No. 3, International Brotherhood of Electrical Workers.

Marcus E. Joffe, of New York City, for defendants Combined Amusement Crafts and Carl Lessing.

THACHER, District Judge (after stating the facts as above). [1] It seems entirely clear that this case can find no support

in the Sherman Act, as amended by the Clayton Act (15 USCA § 1 et seq.). Strikes were not called or threatened against the use of plaintiffs' organs, but only against the employment of nonunion labor in the local work of installation and maintenance. The purpose of all that was done was to coerce the employment of union men in one local craft through the refusal of other crafts to work on the same building with nonunion men. There was no intent, express or implied, to exclude nonunion products from interstate commerce, as in the Bedford and Duplex Cases. On the contrary, the effect, if any, upon interstate commerce, resulted from interferences with the local installation of plaintiffs' organs for a purely local object. The case is therefore governed by principles applied in Industrial Ass'n v. United States, 268 U. S. 64, 77, 45 S. Ct. 403, 69 L. Ed. 849, and United Mine Workers v. Coronado Co., 259 U. S. 344, 410, 411, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and the decisions in Bedford Co. v. Stone Cutters' Ass'n, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, and Duplex Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, are not in point. In the Bedford Case it was said:

"The product against which the strikes were directed, it is true, had come to rest in the respective localities to which it had been shipped, so that it had ceased to be a subject of interstate commerce, Industrial Ass'n v. United States, 268 U. S. 64, 78, 79 [45 S. Ct. 403, 69 L. Ed. 849]; and interferences for a purely local object with its use, with no intention, express or implied, to restrain interstate commerce, it may be assumed, would not have been a violation of the Anti-Trust Act. Id., p. 77 [45 S. Ct. 403]; United Mine Workers v. Coronado Co., 259 U. S. 344, 410, 411 [42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762]. But these interferences were not thus in pursuit of a local motive; they had for their primary aim restraint of the interstate sale and shipment of the commodity. Interstate commerce was the direct object of attack 'for the sake of which the several specific acts and courses of conduct [were] done and adopted.' And the restraint of such commerce was the necessary consequence of the acts and conduct and the immediate end in view."

Coming, then, to the contention that plaintiff is entitled to relief under the common law of this state, there is no doubt that the defendant Organ Workers' Local No. 9, having failed in its efforts to unionize the plaintiffs' employees in the installation and mainte-

nance of pipe organs in New York City by calling a strike of such employees, has for some time past endeavored to accomplish the same result through the sympathetic support of various unions affiliated with the Building Trades Council of New York, and that it has been able to persuade some of these affiliated unions to refuse to work in buildings where nonunion employees of the plaintiffs are engaged in the installation of organs. The Organ Workers' Local No. 9 has not only endeavored to prevent the employment of nonunion men by the plaintiffs in the installation of organs, by persuading other trades to refuse to work on buildings where such instruments were being installed, but through its affiliation with the Combined Amusement Crafts has endeavored in much the same way to prevent the employment of nonunion labor in the maintenance of organs, after installation, in theaters, by persuading the various crafts to refuse to work in theaters where plaintiffs' nonunion employees have been engaged in repairing or tuning organs. All this has been done through peaceful persuasion, without threats of violence or other unlawful act, and the question presented is whether it is lawful for union men, engaged in the construction of buildings and in the operation of theaters, to refuse to work while nonunion men of another craft are at work on the premises.

In considering this question it is important to bear in mind that the plaintiffs' employees are entirely content. They have no controversy with their employer regarding their wages, or the hours or conditions of their employment. It is, indeed, entirely clear that Organ Workers' Local No. 9 is attempting to coerce the employment of union labor, not through the exercise of its members' right to strike, but by persuading members of other crafts to exercise their rights in its behalf, and thus indirectly to accomplish its purpose, which it failed to accomplish in the general strike of 1925.

[2] In this state, a secondary boycott is not illegal per se, and is condemned only if inspired by malicious intent and purpose to destroy the good will or business of those against whom it is directed. Cf. Bossert v. Dhuy, 221 N. Y. 342, 117 N. E. 582, Ann. Cas. 1918D, 661, and Auburn Draying Co. v. Wardell, 227 N. Y. 1, 124 N. E. 97, 6 A. L. R. 901. In Duplex Co. v. Deering, supra, the secondary boycott there in question was not held illegal under the laws of this state. The opinion of the court did not rule on the question, resting decision solely on the Sherman Act, as amended by the Clayton Act.

The three members of the court who dissented were of the opinion that the plaintiff had no cause of action by the common law of New York. So, also, in Bedford Co. v. Stone Cutters' Ass'n, supra, decision went solely upon the federal statutes.

[3-5] That workingmen may organize for purposes deemed beneficial to themselves, and in their organized capacity may determine that their members shall not work with non-members, or upon specified work or kinds of work, is the settled law in this state. Bossert v. Dhuy, supra; National Protective Ass'n v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648. It was, therefore, not unlawful for the defendant unions to forbid their members working with nonunion men employed in the same craft. Self-interest in such a case is sufficient justification, and injury to others is incidental to the exercise of a personal right. How far the members of a craft may go in their organized capacity in refusing to work in the same building with nonunion members of other crafts is a question not so simple of solution. It depends upon the extent to which those who co-operate have in point of fact a common interest, and are justified in what they do by honest motives to advance self-interest, as opposed to malicious intent to injure the business or good will of another.

It is seldom possible, with any certainty in the correctness of conclusion, to decide such a question upon affidavits and counter affidavits submitted upon motion for preliminary injunction. Facts bearing upon the inquiry are peculiarly lacking from the papers submitted upon this motion, no doubt because each party seems to be contending for an absolute rule—the plaintiff, that under no circumstances can the defendants be justified in what they did by considerations of self-interest; and the defendants, that under no circumstances can their acts be declared illegal. But the conflicting rights involved are not absolute (Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 253, 254, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Auburn Draying Co. v. Wardell, supra), and result will depend upon considerations of motive and justification. The mere refusal to work upon premises where nonunion men are employed is certainly not illegal per se. Nor can it be said that sufficient facts are disclosed to warrant conclusion that the refusal to work was without justification under New York law, upon valid grounds of self-interest.

This leads to a denial of the motion. The suit, however, is one which, in the interest of the parties and of the public as well, demands prompt consideration upon final hearing. If either party desires, the order to be entered denying the motion may provide for a trial of the issues at the June term.